<hr/>

COFFMAN & HORINE, Respondents, *vs.* HUCK, Appellant.

1. Where a court, by its decree, rescinds a sale and conveyance of land, at the instance of the vendee, a mortgage given for the purchase money is rescinded, as a necessary consequence; and it is error in the decree to award a special execution against the mortgaged property, to satisfy damages allowed to the vendor for the vendee's use of the land.

2. Where there is no bad faith, a vendor cannot be made liable for improvements put by the vendee on land, the title to which fails. The measure of damages is the purchase money and interest.

3 A party who enters upon land as a vendee, cannot, upon a subsequent rescision of the contract of sale, be made liable for the rent of the land as a tenant. He is only liable to the extent of the benefit actually derived by him from the use of the land, in ascertaining which, he may be allowed for all outlays in improvements, including those put upon a portion of the land represented, by mistake, to have been embraced in the conveyance to him, but which, in reality, was not.

*Appeal from Ste. Genevieve Circuit Court.*

Petition to foreclose a mortgage given to secure the purchase money of land sold and conveyed by Coffman & Horine to

Huck. The mortgage covered not only the land, the purchase money of which it was given to secure, but also another tract owned by Huck, known as the " Grand Marais tract."

The defence set up was, that when Huck purchased the land, the plaintiffs fraudulently represented that it all lay in a body, and that it included certain improved land, whereas it consisted of four separate tracts, only two of which were contiguous, and did not include the improved land, which was necessary to the enjoyment of a mill, situated upon one of the tracts ; that before defendant discovered that the improved land was not covered by his conveyance, he built upon it a new dwelling house at a cost of $1000, and made other improvements upon it, and also expended $800 in repairing the mill ; that after the discovery, he offered in writing to rescind the sale upon just terms, which the plaintiffs declined to do ; that since their refusal, he had expended $900 in repairs upon the mill neces- sary to preserve the same from destruction. He prayed for a decree rescinding the conveyance, and compelling the plaintiffs to enter satisfaction of the mortgage and deliver up the bonds ; for a special judgment against the property conveyed to him by plaintiffs, for his expenditures in improvements, and for a per- petual injunction.

The cause was heard by the court, but the record contains no finding of the facts, other than a statement in the decree that the court found that, at the time of the sale from plaintiffs to defendant, a mistake was made in regard to the location of one of the tracts conveyed, which materially affected the enjoyment of the property, and greatly impaired its value.

It appeared in evidence that the land which was erroneously supposed to have been included in the conveyance to the de- fendant had been improved by the owners prior to plaintiffs, and had been treated by all of the owners as a part of the land described in the deed, and that the plaintiffs so represented to the defendant, when he purchased ; but when the lines were afterwards run by a surveyor, it turned out that it was public land at the time of defendant's purchase, and had since been

entered by a coal company. The conveyance to defendant was made in March, 1843. In 1849, after the discovery of the mistake, the defendant notified the plaintiffs of his readiness to rescind the contract, but they could not agree on the terms. A witness testified that the property conveyed to defendant, including the mill, was worth an annual rent of $500. There was evidence to sustain the answer as to the value of defendant's improvements. This suit was commenced in October, 1851, and a decree rendered in May, 1853.

The court decreed a rescision of the conveyance, but awarded to the plaintiffs, as damages for the defendant's use and occupation, "after deducting the cost of necessary repairs," the sum of $2,966, and decreed that the "Grand Marais" tract should be held as security for the payment of this sum, and should be sold under a special execution, as in case of the foreclosure of a mortgage, unless the same was paid on or before a specified day.

From a motion for a review filed by the defendant, it appears that the court found that there was no fraud in the sale from Coffman & H. to Huck ; that the rents of the mill and land, during the occupation of the defendant, were of the value of $3,666., and the value of the repairs made by defendant was $700. It appeared also, that the court refused to allow the defendant for his improvements on the land erroneously supposed to be included in his purchase. The defendant appealed.

*Noell* and *Young*, for appellant. The court below erred in making the defendant liable as a tenant for the annual value of the land, during his possession under the purchase. Sugden on Vendors, 249, and authorities there cited. He was at most only liable for what he actually received, and not for what the property is reasonably worth. *Richardson* v. *McKinson*, Littel's Select Cases, 321–22. *Smith* v. *Babcock*, 2 Wood. & Minot, 297. *Edwards* v. *McLeay*, 1 Cooper, 208, 218. And he should be allowed for his improvements and all damages he sustained by the failure of the contract. No fraud *in fact* was necessary to the liability of the plaintiffs to this ex-

tent. The falsity of their representations was a fraud in law. Litt. Select Cases, 323. 3 J. J. Marsh. 257. *Craig* v. *Martin*, 3 J. J. Marsh. 55. *Griffith* v. *Depew*, 3 A. K. Marsh. 181–2. 3 Cranch, 281–2. 8 Mees. & Wels. Ex. Rep. 118. The judgment should be reversed for want of a sufficient finding of the facts.

*Hill, Grover & Hill,* for respondents. When the title of real estate fails, after an executed contract of sale, the measure of damages, in an action on the covenants of seizin and for quiet enjoyment, is the consideration money paid, with interest, for so long a time as the vendee may be compelled to pay for mesne profits, and the costs of suit by which he was evicted. He can recover nothing for increased value, nor for improvements. *Staats* v. *Ex'rs of Ten Eyck*, 3 Caines, 311. *Pitcher* v. *Livingston*, 4 J. R. 1. *Kinney* v. *Watts*, 4 Wend. 38. *Kelly* v. *Dutch Church*, 2 Hill, 15. On an executory contract for the sale of land which the vendor believes to be his own, and when there is no fraud on his part, if the sale falls through in consequence of a defect of title, the measure of damages is substantially the same as in the case of an executed sale. 2 W. Black. 1078. *Baldwin* v. *Munn*, 2 Wend. 399. *Peters* v. *McKeon*, 4 Denio, 546. Here there was no fraud on the part of the plaintiffs. The court, however, allowed the defendant for necessary improvements, which was more than he was entitled to, under the rule above stated. The finding as to the value of the use and occupation of the land was sustained by the evidence. The defendant, however, insists that he is only liable for rents actually received by him, and not for his own use and occupation. If this is so, then a party has only to put out the tenant, and occupy in his own person, to escape liability.

SCOTT, Judge, delivered the opinion of the court.

1. The respondents having taken no cross appeal, the propriety of so much of the decree as rescinds the sale of the land, the purchase money of which the mortgage was given to se-

cure, cannot now be enquired into. The sale being rescinded, the mortgage was at an end, as its entire consideration had failed. There was no longer any debt secured by it, consequently it became of no effect. The original contract having been destroyed, the mortgage, as an incident, fell with it. The mortgage falling, there was no power in the court to hold the land mortgaged subject to any claims the plaintiffs might have, arising from a rescision of the contract. Consequently, the decree of the court, subjecting a portion of the mortgaged premises to sale for any damages resulting from the rescision of the contract was erroneous. The defendant in an execution has a right to select what land seized under it shall first be sold, and it is clearly erroneous for a court to take away that election from him, and to condemn a particular tract of land to be sold. R. C. 481.

The sale having been rescinded, and that portion of the judgment not having been appealed from, the inquiry will be, what compensation the plaintiffs are entitled to, for the use and occupation of the premises by the defendant under his purchase.

2. As to the improvements made upon that portion of the land conveyed to the defendant, the title to which has failed, we can find nothing in the record which should subject the plaintiffs to a liability for their value. The evidence entirely fails to establish any bad faith on their part. Where there is no bad faith, it is clear that the purchase money, with interest, is the measure of damages in an action for a breach of covenant for title. Sedgwick, 207-8-9.

3. We do not hesitate to express our dissatisfaction with the mode adopted, in order to ascertain the value of the rents and profits of the premises, as against the defendant. The sale was rescinded on the ground of mistake—a mistake into which the defendant was led by the plaintiffs. When the result of the calculation of the value of the rents is contemplated, the error is apparent. The contract was made in February, 1846; the suit was commenced in October, 1851; the decree rendered in May, 1853, rescinding the contract, and the rents are adjudged

to be $3,666. The purchase money was $5000. Thus, in less time than eight years, a purchaser, taking possession under a belief that he was the owner, induced by the mistake of the plaintiffs, is held accountable for an amount equal to nearly three-fourths of the purchase money, by way of rent. One who enters as a purchaser on lands is influenced by motives very different from those which actuate a tenant taking a lease at a certain rent, and he should not be chargeable as *such* when he loses his purchase, without his fault. As not the least blame attached to the defendants' conduct, and as there was no expectation of being charged as a tenant, he should be liable only for the profits he made on that portion of the land which really belonged to the plaintiffs. So far as he was benefitted by the occupation, he is liable, and on no principle of law or justice should he be held to a more extended accountability. He should be allowed for all improvements made upon the land, and it should not be lost sight of that here the claim for improvements is made by way of recoupment against a claim for rents. Under such circumstances, justice requires that such claim should be regarded with liberality. It was no fault of the defendant that he was there. So soon as the mistake was discovered, he offered to reconvey the land and rescind the contract, and that was prevented by the plaintiffs. The weight of the English and American authority is, that when one takes possession under a contract to convey, he does not thereby create the relation of landlord and tenant between the vendor and himself, and that an action for use and occupation will not lie against him, until there has been an abandonment of the contract. But this principle does not apply here. This is a much stronger case. Here the land was actually conveyed. The defendant can only be held liable to the amount that he has been benefitted by the occupation, as he has not paid the purchase money, and not for what a single witness may say was the annual value of the premises. By such a process, the plaintiffs, in a short time, taking advantage of their own refusal to rescind a contract, which the judgment in this case as-

sumes ought to have been rescinded, would have received the price of the land, and then have taken the land itself. We have said, that the defendant, Huck, would have no claim to damages for the improvements erected upon the land not belonging to the plaintiffs, in an action for a breach of the warranty of title; but we are of opinion that, in determining the question, how far the occupation of Huck of the premises in controversy has been beneficial, the fact may be considered that outlays for improvements were made on a portion of the land to which the plaintiffs had no title, and from a consideration of this, together with the other circumstances, it will be determined how far Huck was benefitted by his occupation of the premises, the contract for the sale of which has been rescinded. The judgment is reversed, and the cause remanded, the other judges concurring.