## ELIZABETH BRINCKERHOFF *vs.* PHILIP PHELPS.

If one undertakes to sell land knowing that he has no authority to convey, the question of good faith can not arise, and he can not claim, and is not entitled to, any protection upon that ground.

If, under such circumstances, he assumes to sell without being in a situation to convey, and without the power to confer any title, he does it at his peril, and can not claim the protection of a vendor in good faith.

He violates his contract, and must be held responsible for the damage occasioned by a breach of it.

Where a vendor knows that he has no power to convey, and fails to disclose to the vendee his want of power, the case is clearly distinguishable from one where a party acts under an honest but mistaken belief that he has a good title, and does every thing in his power to execute the contract.

Where a contract to convey land describes the grantor as "trustee, &c." but without stating for whom, this will not relieve him from personal responsibility, nor change the legal effect of his contract.

In an action for the breach of a contract to convey lands, the true rule of damages is, the value of the lands at the time of the breach, and interest from that time.

The decision in *Brinckerhoff* v. *Phelps*, (24 *Barb.* 100,) reaffirmed, and held to be decisive and controlling.

THE question in this case arises upon a verdict for the plaintiff subject to the opinion of the court at a general term, directed by Mr. Justice Hogeboom, at the Albany circuit, in November, 1863. The cause was first tried before Justice Harris, who held that the plaintiff was not entitled to the value of the land above the contract price,.but only to reimbursement of the amount paid. The judgment was reversed on appeal. (*See* 24 *Barb.* 100.)

The action was brought to recover damages for an alleged breach by the defendant of a contract, to convey to the plaintiff certain lands in the county of Fulton. The complaint alleged that on the 13th of June, 1849, the defendant made an agreement in writing by which he agreed to convey the plaintiff lot No. 82, in Glen, Bleecker & Lansing's patent, for seven shillings per acre. The lot was to be surveyed at the expense of the estate for which the defendant acted as trustee, and the plaintiff was to pay for the actual number

of acres, as appeared by such survey, and a warranty deed was to be given by the 15th of July, 1849, and the lot conveyed, free of incumbrance. It was also alleged that $318.25 of the purchase money was paid at the execution of the contract, and that the lot contained eight hundred and thirty-five acres; and also that the plaintiff offered to pay the balance of the purchase money, and demanded a conveyance according to the contract, but that the defendant refused to convey, and a judgment was demanded that the defendant convey according to the contract, or that the plaintiff recover damages. The answer alleged that the defendant never was the owner of the land in question, and never had any interest in it, except as trustee of Catharine W. Van Rensselaer, under a deed of trust, which gave the defendant no authority to sell the land in question without the written consent of Mrs. Van Rensselaer. That at the time of the contract the plaintiff, and her agent who negotiated it, knew the nature of the defendant's interest and his power under the deed of trust. That the defendant has been always willing to convey, but Mrs. Van Rensselaer has absolutely refused her consent to such conveyance. These allegations were denied in the reply.

On the trial, the contract was proved, and the payment thereon, at its date, of $318.25 of the purchase money; also that the lot contained eight hundred and thirty-five acres, according to a survey made prior to August, 1849, and that thereupon the plaintiff tendered the balance of the purchase money and demanded a deed, and that the defendant refused to give it, for the reason that Mrs. Van Rensselaer had positively refused her consent, and at that time the property was worth $2000. It was also proved, that by an order of the court of chancery, made November 17, 1841, the defendant was appointed successor of Julius Rhodes as trustee for Mrs. Van Rensselaer, under a deed of trust dated May 20, 1841, which embraced the lands in question, by virtue of which, with the assent in writing of Mrs. Van Rensselaer, the de-

fendant as trustee was authorized to sell; and that soon after his appointment as trustee, Mrs. Van Rensselaer told the defendant he need not consult her about the sale of any of such trust land, but to consult her husband, and whatever they agreed upon she would give her consent thereto. That prior to the making the agreement with the plaintiff, the defendant sold several pieces of land, without first consulting Mrs. Van Rensselaer, and she gave her assent. That the agreement with the plaintiff was made with the concurrence of the husband, the defendant believing that Mrs. Van Rensselaer would give her consent to it, which the defendant repeatedly requested her to do, but she refused to consent to any deed to the plaintiff upon any terms and conditions whatever, for personal reasons. None of these facts were disclosed to the plaintiff. That the defendant, finding it impossible to pursuade Mrs. Van Rensselaer to consent to any deed to the plaintiff, afterwards sold the land to another person, for $1000, Mrs. Van Rensselaer assenting to the conveyance. Upon these facts, the justice directed a verdict for the plaintiff for the sum of $3378.42, subject to the opinion of the court, this sum being the value of the land, with the money paid, and interest, deducting the amount of unpaid purchase money.

*C. B. Cochran,* for the defendant.

*J. K. Porter,* for the plaintiff.

*By the Court,* MILLER, J. Upon the former trial of this cause it was decided at the circuit that the plaintiff was not entitled to recover any thing beyond the amount paid by her to the defendant, at the time of the execution of the agreement, with the interest. This was held to be erroneous, by the general term, upon appeal, and the rule of damages was decided to be the value of the land at the time of the breach, and interest from that time. The learned judge who wrote

the opinion placed his decision upon the ground that the defendant either made a contract, which he knew he had no right to make, or he arbitrarily refused to fulfill when he found he could get more than the price for the land which the plaintiff had agreed to pay. (24 *Barb.* 105.) It is obvious that unless the facts of the case were materially changed upon the second trial, or unless the principle laid down by the court in the opinion referred to has been overruled by some subsequent adjudication, the question now presented must be regarded as *res adjudicata.*

*First.* It is insisted by the defendant in regard to the first proposition that the facts of the case are entirely different from those presented on the former trial; that there was then no evidence of the good faith of the defendant, and the judgment of the general term was based upon the ground that want of faith might be imputed to him; whereas now the case establishes that the defendant acted in good faith and made every effort to have the contract performed.

The additional facts proven upon the second trial, while they tend to establish that the defendant believed that Mrs. Van Rensselaer would assent to the execution of the deed to the plaintiff, do not negative the conceded fact that he knew that he was prohibited from selling without her consent; or that he was not ignorant of his want of power in this respect. Nor does the defendant satisfactorily explain why he did not disclose to the plaintiff the parol agreement between himself and Mrs. Van Rensselaer, dispensing with her consent, which was expressly required by the terms of the trust deed; nor why he retained the money paid by the plaintiff upon her contract; and why he united with Mrs. Van Rensselaer in selling the same property at an advanced rate to a third party, without any consultation with the plaintiff; without notifying her, and in fact without any offer on his part to convey such title as he had to the premises in question. It is by no means clear, I think, from the evidence that the defendant proved that he acted in good faith,

or that he was in a position to claim that such was the fact. But suppose he had established good faith on his part; does that improve his condition, if he had knowledge that he had no right to convey? It was not the want of good faith upon which the decision was made by the general term, but upon the fact that he had knowledge or arbitrarily refused to convey. Either the one or the other made him liable. If he sold the land knowing that he had no authority to convey, then the question of good faith can not arise, and he can not claim and is not entitled to any protection upon that ground. If under such circumstances he assumes to sell without being in a situation to convey, and without the power to confer any title, he does it at his peril, and can not claim the protection of a vendor in good faith. He violates his contract, and must be held responsible for the damage sustained by a breach of it. (*Hopkins* v. *Gazebrook,* 13 *Eng. Com. Law,* 100, 101. *Hopkins* v. *Lee,* 9 *Wheat.* 109. *Robinson* v. *Harman,* 1 *Exch. R.* 849. *Hill* v. *Hobart,* 16 *Maine Rep.* 169. *Trull* v. *Granger,* 4 *Seld.* 115. *Fletcher* v. *Button,* 6 *Barb.* 650.) It is evident that the defendant knew that he had no power to convey, and there is no evidence to show that he disclosed to the plaintiff his want of power. The case is clearly distinguishable from one where a party acts under the honest but mistaken belief that he had a good title, and does every thing in his power to execute the contract.

*Second.* I think that the principle established in 24 *Barb.* 100, has not been overruled by the case of *Conger* v. *Weaver,* (20 *N. Y. Rep.* 140,) and that the recovery in the case at bar can be upheld within that decision. That was an action brought to recover damages for the breach of an executory contract for the sale of a farm. The defendant tendered a warranty deed executed by himself and wife, which the plaintiff refused to accept, alleging that it did not convey a good title free from all incumbrances. The fact was, that the defendant had a good title to all but five and three fourth acres

of the wnole farm, and as to this, the evidence was conflicting whether the conveyance was made to the defendant or to his father, the deed having been destroyed by fire. It was apparent that the defendant had acted in good faith, and the court of appeals held that only nominal damages were recoverable for the the failure of the vendor to perform an executory contract for the conveyance of land, made in good faith and broken without fraud, by reason of his inability to make a good title. Denio, J. who delivered the opinion of the court, in referring to the case at bar remarks, that the judgment, as he understands it, was placed upon the distinction established in 2 *Wend.* and 4 *Denio,* of a contract made with *knowledge on the part of the vendor that he had no title, or of a dishonest refusal to convey because a better price could be obtained from another purchaser.* It will be seen that there is no analogy between the case cited and the present one. There was no pretense that the defendant in *Conger* v. *Weaver* had knowledge of the defect in his title ; and the evidence shows that he did all in his power to carry out the contract. I understand the learned judge to assent to the correctness of the distinction recognized by Judge Gould in his opinion ; and in no way to question the authority of that case.

In *Baldwin* v. *Munn,* (2 *Wend.* 399,) one of the cases cited by Judge Denio, the refusal to convey was placed upon the ground that after the making of the contract the defendant had ascertained that his grantor had conveyed to another party before he deeded the land to him.

In *Peters* v. *McKeon,* (4 *Denio,* 546,) the other case cited, the defendant could not make a perfect title to an undivided twenty-fourth part owned by an infant, as to which he offered a covenant by a third party, that the infant would convey on coming of age. The defendant tendered a deed and offered such title as he had, which the plaintiff refused to receive. Neither of these cases sustains the defendant's po-

sition. They were disposed of upon facts entirely different from those presented in the case at bar.

I see no difficulty in reconciling the cases cited with *Brinck-erhoof* v. *Phelps*, (24 *Barb.* 100,) and discover no adjudication which disturbs the doctrine there laid down. It therefore must be considered as decisive and controlling in this case. Although the contract describes the defendant as a trustee, yet it does not state for whom, and I think does not relieve him from personal responsibility, nor change the legal effect of his contract. (*Taft* v. *Brewster*, 9 *John.* 334. *White* v. *Skinner*, 13 *John.* 307. *De Witt* v. *Walton*, 5 *Seld.* 570. *Brinckerhoof* v. *Phelps*, 24 *Barb.* 100.)

It is conceded that there was a mistake in allowing interest on $318.25 paid to the defendant on the 13th of June, 1849, in addition to the excess of the value of the property beyond the amount remaining unpaid; and this amount, being $202.02, should be deducted from the amount of the verdict.

Upon the plaintiff stipulating to deduct the above mentioned amount, judgment should be entered on the verdict in favor of the plaintiff, with costs.

[ALBANY GENERAL TERM, December 5, 1864. *Peckham, Miller* and *Ingalls*, Justices.]