THOMAS KIRKPATRICK, Respondent, *vs.* WILLIAM G. DOWNING, Appellant.

1. *Contracts—Sales of land—Rescission of—Vendee cannot be held liable for rent.*— One who enters upon land as a vendee cannot, upon a subsequent rescission or breaking up of the contract of sale, be made liable for the rent of the land as a tenant. He is only liable to the extent of the benefit actually derived from the use of the land, in ascertaining which he may be allowed for all outlays in improvements.

2. *Contracts—Sale of lands—Rescission of—Measure of damages to vendee.*— Where the vendor in a contract for the sale of land, knew at the time the contract was entered into that he had no title, or if the sale goes off because he changes his mind, or because he neglects to take the proper steps to put the purchaser in possession, the purchaser may in an action for breach of such contract, recover, beyond his expenses, damages for the loss of his bargain; and the measure of damages is the value of the land, at the time of the breach. Where there is no evidence given, showing any change in the situation, the consideration paid and interest will be taken as the correct value of the land; but when there is evidence given, showing a change in the value of the land, its value at the time the breach occurred and when the conveyance ought to be made will furnish the standard of damages.

*Appeal from Knox Circuit Court.*

*Glover & Shepley and J. G. Blair,* for Appellant.

I. The rule which makes a vendor liable for the value of the land he agreed to convey, at the time he ought to have conveyed, and for no more, is equal and just.

This is the measure of damages applicable to the case. The consequence is that when the vendor refuses to convey, the vendee not having paid the purchase money, the vendee is entitled to the full value of the premises on the day of the breach of contract minus the purchase money, remaining unpaid. If the land is not equal in value to the residue of the purchase money, the vendee is not damaged. This rule is established by the best authorities. (Shepperd vs. Hampton, 3 Wheat., 260.) The same principle is applicable to land as to personal property. (Hopkins vs. Lee, 6 Wheat., 109.) The overwhelming weight of authority is in support of the doctrine, whether the thing to be conveyed be lands or chattels. (Loomis vs. Wathams, 8 Gray, 557; Lawrence vs. Chase, 54 Me., 196; Old Colony, etc. vs. Evans, 6 Gray,

25 ; Cox vs. Henry, 32 Pa. St., 18 ; Gale vs. Dean, 20 Ill., 320 ; Letcher vs. Woodson, 1 Brock., 212 ; Warren vs Wheeler, 21 Me., 484 ; Buckmaster vs. Grundy, 1 Scam., 310 ; McKee vs. Brander, 2 Scam., 339 ; Brenkerhoff vs. Phelps, 43 Barb., 471 ; Conger vs. Weaver, 24 Barb., 100 ; S. C., 20 N. Y., 140 ; Hill vs. Hobart, 16 Me., 169 ; Whiteside vs. Jennings, 19 Ala., 784 ; Nichols vs. Freeman, 11 Ired., 99 ; Koeltz vs. Bleckman, 46 Mo., 320.)

II. The rule adopted by some of our courts, allowing the vendee to recover amount paid with interest, is based upon the idea that the vendee having paid all he contracted to pay is entitled to recover all he contracted to receive. The principle of that rule however has never been extended, as we can see, so far as to allow vendee to recover all paid, when he has not paid all he contracted to pay, and where the land has depreciated in value. In such cases the rule of measuring damages, laid down by the Supreme Court, (S. Carolina, 11 Ired., 99, and Sedgwick on D., 6 Ed. side page 190 to p. 221,) that the difference between the value of the land at the breach and the amount of the purchase money remaining unpaid, is the only true and equitable rule, and being analagous to this case should govern it. This is based upon the uniform principle that a man should only recover actual damages sustained, in the absence of fraud. (6 Sedg., Meas. Dam., 174, 229.)

*G. F. Ballingal*, for Respondent.

I. Plaintiff was in possession of the land as purchaser of defendant, and the relation of landlord and tenant, could not be made to exist between them ; (Coffman vs. Huck, 19 Mo., 435 ; Griffith vs. Depenstal, 3 A. K. Marshall, 1058,) and the charge for rent and profit could not be sustained.

II. Time was not made of the essence of the contract, and if defendant had disabled himself from conveying to plaintiff, by the sale to Baker, then he was at fault and plaintiff was not limited to the penalty in the bond and could waive the same and sue for damages. (Foley vs. McKeegan, 4 Iowa, 1 ; Sween vs. Steele, 5 Iowa, 352.)

3—VOL. LVIII.

III. If there was no bad faith on the part of defendant in selling the land to another person, and if there is no cancellation, then the measure of damages would be the purchase money and interest; and it was immaterial what the value of the land was at the time plaintiff purchased of defendant, or the improvements thereon, or the improvements at the time defendant sold to Baker, or the value at the time defendant sold to Baker, or the value of the land, or the improvements on said land to Baker by defendant, or whether the same had increased or decreased in value since the sale to plaintiff, and up to the sale to Baker. And if there is bad faith, then the vendee can recover not only the purchase money and interest, but substantial damages. (Coffman vs. Huck, 19 Mo., 435; Foley vs. McKeegan, 4 Iowa, 1; Werting vs. Nisely, 13 Penn., 650; Clark vs. Parr, 14 Ohio, 118; Pena vs. Duvall, 9 B. Mon., 48; Shaw vs. Wilkins, 8 Humph., 647; Peters vs. McKeon, 4 Denio, 546; Kinney vs. Watts, 14 Wend., 38; Pitcher vs. Livingston, 4 John., 1; Fletcher vs. Button, 6 Barb., 646; Bitter vs. Brough, 1 Jones, Pa., 127; Griffith vs. Depew, 3 A. K. Marshall, 1058; 45 Mo., 404; Langford vs. Caldwell, 48 Mo., 508; Goff vs. Hanks, 5 J. J. Marshall; Davis vs. Lewis, 47 Bibb., 457; Breckinridge vs. Hake, 4 Bibb., 272; Combs vs. Harlton, 2 Dana, 464; Lowry vs. Cox's admr. and heirs, 2 Dana, 469; Brandt vs. Foster, 5 Iowa, 287; Patrick vs. Roach, 21 Texas, 251; Sween vs. Steele, 5 Iowa, 352.)

WAGNER, Judge delivered the opinion of the court.

The plaintiff, Kirkpatrick, filed his petition, in which he stated that on the 25th of August, 1857, the defendant, Downing, was owner in fee of 160 acres of land, which was therein described; and that on the same day Downing sold the same to Kirkpatrick, for the sum of $3,200, and executed to him a title bond therefor; that Kirkpatrick paid in money and property $500 at the time, and gave his five several promissory notes for the balance, each for the sum of $540, and payable respectively, in one, two, three, four and five years; that, by the terms of the bond, Downing was to make a deed to plain-

tiff upon the payment of the last note ; that Kirkpatrick took possession of the land, and on March 1, 1859, with the consent of Downing, he sold 40 acres of the land to Charles Hughes, for $1,200, which amount was paid by Hughes to Downing, and which was to be credited on the indebtedness of the plaintiff ; that plaintiff occupied and cultivated the land to sometime in 1865, and paid $80 taxes on it, and made lasting and valuable improvements thereon, costing $1,000, and cleared thirty-five acres of land, which was worth $700, and paid the promissory notes in full, and demanded of Downing a deed for the land, which he refused to make ; and that he sold and conveyed the land to one Baker ; that in 1864, whilst plaintiff was absent from home, Downing procured fraudulently from plaintiff's son a surrender of the title bond, the son having no authority to give it up. The petition then prayed judgment for $1,780, the value of the improvements made and amount of taxes paid, and also $3,200 purchase money, with interest thereon.

In substance the answer of Downing stated that he was the owner of the lands in fee simple ; sold them to plaintiff at the price and upon the terms stated in the petition ; and that he bound himself, upon payment in full of the notes, to convey the title to the plaintiff.  The answer denied the payment of the notes in full, and averred that, independent of the $1,200 paid by Hughes, plaintiff only paid $920 ; and that plaintiff and defendant agreed that the forty acres sold to Hughes, should be conveyed by defendant to Hughes. It was admitted that plaintiff made some improvements, but it was denied that he ever made as much as was alleged.

There was a denial of any fraudulent procurement of the surrender of the title bond. But it was alleged that plaintiff left home in 1861, his family residing on the land ; and that they continued on it till 1865, and that plaintiff's wife was his agent during his absence ; that in 1864 plaintiff's family were committing waste on the land, impairing defendant's security for the purchase money, and that defendant remonstrated with her about it, and that she said that she was au-

thorized to rescind the contract, and produced a letter to that effect from her husband ; and that the contract was then and there cancelled ; and that the two remaining notes which were due, amounting, with interest, to about $1,900, were delivered to her by the defendant ; that these notes, with the interest, were greater in amount than the value of the land ; and that in pursuance of this cancellation, plaintiff's family left the land.

That afterwards, in 1865, defendant sold the whole 160 acres for $1,600, the full value of it at that time ; and at the same time the 120 acres were not worth more than $900; that plaintiff and his family were in possession of the land from 1857 to 1865, cultivating the same and enjoying the crops, the use of the land being of the annual value of $400, which defendant prayed to have recouped ; that, while in possession of the land, plaintiff committed waste, cut down and carried away timber to the value of $500, which was also asked to be recouped.

All that part of the answer in reference to a sale of the land to another person for its full value, and the annual value of the rental of the land, and the waste committed by the plaintiff whilst in possession, was stricken out. The plaintiff then filed a replication to the new matter set up in the answer, and the cause was tried before the court and a jury, and a verdict was rendered for the plaintiff for $2,076.60. It is unnecessary to notice any of the points made in relation to the admission or exclusion of evidence, as we have been unable to perceive any substantial error in the rulings of the court in that respect.

The evidence was conflicting in regard to the authority of plaintiff's wife to deliver up the title bond and rescind the contract, and the jury by their verdict, evidently found that she possessed no such authority. That was a matter for them to determine on the testimony, and with their verdict we have no right to interfere. That part of the answer asking for a recoupment for the value of the rent and damages was rightfully stricken out. The relation of landlord and tenant did not exist in this case, and that is the only relation upon

which the defense would have been available. The case of Coffman vs. Huck, (19 Mo., 435) is a direct authority for this proposition, and it was there held that a party who enters upon land as a vendee cannot, upon a subsequent rescission or breaking up of the contract of sale, be made liable for the rent of the land as a tenant. He is only liable to the extent of the benefit actually derived by him from the use of the land, in ascertaining which he may be allowed for all outlays in improvements.

But the only question of any real importance in this case, and upon which the decision must ultimately turn, is that in regard to the measure of damages.

This is the only question that was presented with any prominence in the instructions of the court, and this will now be considered.

For the plaintiff the court gave the following declarations: "The jury are instructed that unless they believe from the evidence, that the wife of the plaintiff was authorized by him to cancel and rescind the written contract for the conveyance of the land from defendant to plaintiff, and surrender the bond and receive the notes in pursuance thereof, and that said wife did cancel and rescind said contract and deliver up said bond in pursuance of said authority given said wife by said plaintiff, they will find for plaintiff and assess his damages at the amount of purchase money paid by plaintiff, with six per cent. interest thereon from the time the same was so paid until the present time."

At the instance of the defendant an instruction was given, that if the wife of the plaintiff was authorized to cancel or rescind the contract of sale, then the verdict should be for the defendant, but the court refused at his request, to declare the law to be: "That if the jury shall believe from the evidence, that the defendant acted in good faith in the sale of the land in question to Baker, and not with intent to injure or defraud plaintiff, then the measure of damages in the case is the actual damages sustained by plaintiff, and if the jury shall further believe from the evidence, that at the time de-

fendant sold said land to said Baker, plaintiff was owing defendant therefor more than said land was worth in cash in the market, then the jury should allow nominal damages only."

Upon the question of damages in cases like this, the authorities are conflicting and inharmonious. That there are many cases of the very highest respectability sustaining the view taken by the court below is unquestioned. In conformity with the decisions in both England and America, the courts in this State have held that the measure of damages on a breach of covenant of seizin is limited by the consideration money and interest. (Dickson vs. Desire, 23 Mo., 166 ; Tong vs. Matthews, *Id.*, 437.) The covenant of seizin is broken as soon as it is made. If at the time of the execution of the deed the grantor does not own the land, the covenant is broken immediately, and the rule for assessing the damages arising on this breach is based upon the principle that, no land having passed by the vendor's deed to the purchaser, the purchaser has lost no land by the breach of the covenant, he has lost only the consideration he paid.

And many cases, as before remarked, have held this rule equally applicable to the case of a sale of land, when the vendor for any reason refuses to carry out his agreement and convey the title. As abundant authorities may be found, both for and against this rule, it is best to examine the question in the light of reason and determine if possible, what line of adjudication will most likely be promotive of the ends of justice. Mr. Sedgwick well remarks in his treatise on the Measure of Damages, that although courts have felt themselves bound in some instances, as to real covenants, to adopt arbitrary rules, still the constant effort is to give compensation for what is actually lost, not to allow remuneration for a mere technical breach of agreement, but to make the measure of damages correspond with the real injury sustained and not to permit an action where no loss has been suffered. (Sedg. Meas. Dam., 6th Ed., 194.)

A difference has been taken in some of the cases in regard to the good or bad faith of the vendor, in failing to comply with his agreement, as affecting the amount of damages, some holding that where he is guilty of fraud, or has acted dishonestly, substantial damages may be awarded to the purchaser, whilst others take the opposite view, and declare that the motives which actuated the seller can have no influence on the principle involved, and that the damages in either event will be the same. In Flurean vs. Thornhill, (2 W. Bl., 1078) it was held that contracts for the sale of real estate are on the condition, always implied if not expressed, that the seller has a good title, and if without fraud he fails to convey by such title, the vendee is not entitled to damages for the loss of his bargain. But in the still later and very recent case of Engel vs. Fitch, (L. R., 3 Q. B., 314) this question was subjected to a very full and elaborate discussion in the Queen's Bench. It appeared in this case, that the defendants, mortgagees of the lease of a house, sold it by auction to the plaintiff, the particulars of the sale stating that the possession would be given on completion of the purchase. The plaintiff re-sold it at an advance to a person who wanted the house for occupation. Upon an investigation of the title, it was found satisfactory, but on the plaintiff requiring possession before completing the purchase, the mortgagor was found to be in possession, and refused to give it up. The defendants could have ousted him by ejectment, but they refused to complete the sale on the ground of expense. On this the plaintiff brought an action for breach of the contract of sale, and it was held, that, as the breach of contract arose not from inability of the defendants to make a good title, but from their refusal to take the necessary steps to give the plaintiff possession pursuant to their contract, the plaintiff could recover not only the deposit and the expense of investigating the title, but also damages for the loss of his bargain, and that the measure of damages was the profit which it was shown he could have made on a re-sale. The cases bearing on the subject were all thoroughly reviewed, and the above result arrived at.

The case of Engel vs. Fitch was affirmed in Exchequer Chamber, (L. R. 4 Q. B., 659) with a slight difference in the mode of stating the measure of damages, which was held to be the difference between the contract price and the value at the time of the breach of the contract, the profit which it was shown the plaintiff could have made on a re-sale being the evidence of this enhanced value and its amount. In delivering the judgment, Kelly, Ch. B., said: "No case has been cited in which the purchaser of real property has been held disentitled to recover damages like the present, except in the case of Flurean vs. Thornhill, and the cases which followed it, and upon the one ground of the vendor's inability to make out a title; and there is no authority to show that when the breach of contract has been on any other ground, any other rule as to damages applies in contracts as to the sale of real property than that which prevails in the ordinary case of a breach of contract." This decision is highly approved by Mr. Dart, and in commenting upon it (2 Dart Vend. and P., 4 Eng. Ed., 873-4) he says; "This decision, though scarcely reconcilable with some of the earlier authorities, has placed the rule on a clear and intelligible footing, and has excluded from its operation the case of a vendor selling *mala fide*, or entering into a merely speculative contract for sale." This rule, then, is clearly deducible from the English authorities, if the vendor knew, at the time the contract was entered into, that he had no title, or if the sale goes off because he changes his mind, or because he neglects to take the necessary steps for putting the purchaser into possession, the purchaser may, in an action for breach of such contract, recover, beyond his expenses, damages for the loss of his bargain. (1 Chit. Contracts, 11 Am. Ed., 437.)

Mr. Perkins, in his last edition of Sugden on Vendors and Purchasers, in an elaborate note, says that the current of American authority now runs in the same direction. He says: "It has been held that, where the vendor has, in bad faith, agreed to sell land to which he knew he had no title (McDonnell vs. Dunlap, Hardin, 41; Davis vs. Lewis, 4 Bibb., 456; Baldwin

vs. Munn, 2 Wend., 399; McNair vs. Compton, 35 Penn. St., 23; Brinkerhoff vs. Phelps, 24 Barb., 100; S. C. 43 Barb., 469; Drake vs. Baker, 34 N. J., 358; Peters vs. McKeon, 4 Denio, 556; Bush vs. Cole, 28 N. Y., 261); where, having the title at the time of the agreement to convey, he has afterwards disabled himself from conveying by a transfer to a third person (Wilson vs. Spencer, 11 Leigh, 261; Dustin vs. Newcomer, 8 Ohio, 49); where he refuses to convey because the land is greatly enhanced in value (Brinkerhoff vs. Phelps, 24 Barb., 100; S. C. 43 Barb., 469), and also, where having the title at the time he ought to convey according to his agreement, he still refuses to convey, in all these cases, in a suit at law for a breach of the agreement to convey, the vendee is entitled to recover such sum as will indemnify him from the actual and direct loss sustained by the non-performance of the agreement, which would generally be the difference between the contract price and the enhanced value of the land when the conveyance should have been made." (Western Railway vs. Babcock, 6 Met., 358; Pringle vs. Spaulding, 53 Barb., 17.)

So in Michigan, the measure of damages for a willful breach of a contract to sell and convey a lot of land, was held to be the difference between the actual value of the land at the time of the breach and the sum agreed to be paid. (Allen vs. Atkinson, 21 Mich., 353.) And again in the case of Hammond vs. Honnin, (Id., 374) the court regards it as settled, that while the ordinary measure of damages for breaking a covenant to sell real estate continues to be the consideration money and interest, with perhaps also the cost of investigating the title; yet, that where a party contracts to sell, knowing he cannot make a title, or having a title, refuses to convey, or disables himself from conveying, or otherwise acts in bad faith, the vendor is remitted to his general liability. The rule is, then, the same in relation to real as to personal property, and the measure of damages is the value of the land at the time of the breach.

The same rule prevails in the Supreme Court of the United States. In Hopkins vs. Lee, (6 Wheat., 109) the court said:

" The rule is settled in this court, that in an action by the vendee for a breach of contract on the part of the vendor for not delivering the article, the measure of damages is its price at the time of the breach. The price being settled by the contract, which is generally the case, makes no difference, nor ought it to make any ; otherwise the vendor, if the article has risen in value, would always have it in his power to discharge himself from his contract, and put the enhanced value in his own pocket; nor can it make any difference in principle whether the contract be for real or personal property, if the lands, as is the case here, have not been improved or built on. In both cases the vendee is entitled to have the thing agreed for at the contract price, and to sell it himself at its increased value. If it be withheld, the owner ought to make good to him the difference."

So in Maine, Hill vs. Hobart (16 Me., 164), it was decided that in debt for breach of a bond conditioned for the conveyance of land, the measure of damages was the value of the land at the time the conveyance should have been made. The court says, when the vendee proceeds at law, he is entitled to a complete indemnity and no more. By a performance he would have received the land, and not receiving that if he obtains the value at the time, that is the exact measure of his loss. And the same doctrine is announced in many other cases. (Warren vs. Wheeler, 21 Me., 484 ; Lawrence vs. Chase, 54 Me., 196 ; King vs. Brown, 2 Hill, 485 ; Boardman vs. Keeler, 21 Vt., 84 ; Bryant vs. Hambrick, 9 Ga., 133 ; Barnham vs. Nichols, 3 R. I., 187 ; Burr vs. Todd, 41 Penn. St., 206 ; Shaw vs. Wilkins, 8 Humph., 647 ; McKee vs. Brandon, 2 Scam., 399 ; Hopkins vs. Yowell, 5 Yerg., 305 ; Cannell vs. McLean, 6 Harr. and J., 297 ; Marshall vs. Harney, 9 Gill., 251 ; Whiteside vs. Jennings, 19 Ala., 784.)

The same principle is applied where the vendee has not actually tendered performance, or has not made an available tender, but, in consequence of the acts of the vendor, or otherwise, is still entitled to maintain a suit for breach of contract on the part of the vendor in not conveying. In such

a case the measure of damages would be the same, namely; the difference between the contract price and the value of the land at the time of the breach. (Lee vs. Russell, 8 Ired., 826; Nichols vs. Freeman, 11 Ired., 99; Goodwin vs. Francis, L. R., 5 C. P., 295.)

The rule must be reciprocal; where the property has enhanced in value the purchaser gets the benefit of the enhancement, so where a depreciation has taken place he must submit to a corresponding loss. In both cases he obtains the true measure of damages, full compensation for the loss sustained. Thus, in Nichols vs. Freeman, the plaintiff purchased a lot of land for $8,000, and paid the greater part of the purchase money. The plaintiff was let into possession, and the defendant executed a bond in the penalty of $10,000, conditioned to convey upon the payment of the balance of the purchase money. The plaintiff was evicted by the judgment creditors of the defendant, and the property sold by the plaintiff for $2,500, which was admitted to be the real value of the property at the time. The court refused to allow the plaintiff to recover the amount of the purchase money, as if he had repudiated the contract and sued for money had and received. It was said: "Here the plaintiff seeks to recover compensation; what sum will put him in as good a condition as if the contract had been performed? In this case he would have got property worth $2,500, but he would have been forced to pay the balance of the purchase money and interest. He has not paid this latter amount, and his damage is the difference between that sum and the value of the property, which, by the case, is agreed to be $207.80;" and to that sum the redress was limited. So in Goodwin vs. Francis, where the purchase money had not been paid, Boville, Ch. J. in delivering his opinion, said: "I am not aware of any decision in which it has been held that, where a man having a good title refuses to convey according to contract, he is not liable to compensate the other party for the loss of his bargain, as well as for any expenses he may have actually incurred. The contrary is laid down in Engel vs. Fitch, and I do not see that Sikes vs. Wild is inconsistent with it, for in

that case there was a failure of the title. I think, therefore, that the defendant is liable for the difference between the contract price and the market value of the estate, and that the price at which it was re-sold is *prima facie* evidence of its market value."

Where there is no evidence given showing any change in the situation, the consideration paid and interest will be taken as the correct value of the land. But where there is evidence given showing a change in the value of the land, the value at the time the breach occurred, and when the conveyance ought to be made, will furnish the standard of damages. This is fair and just for both parties, as they obtain precisely what they are entitled to, and the basis is predicated on actual loss, the full and adequate compensation.

The rule commends itself for its intrinsic justice. It conforms to the varying circumstances of each particular case, and is equitable and just. The arbitrary and unbending rule that the purchase money and interest shall in all cases be taken as the criterion of damages, will, in the majority of instances, do injustice either to the seller or purchaser. No reason is perceived why it should be adhered to and enforced, when one more consistent with equity is found, and which is easily administered. The rule for which we contend is just to both parties. It gives to the purchaser precisely what he has lost in consequence of the breach of contract committed by his vendor, and it makes the latter responsible for the violation of his agreement in the full amount to which he has occasioned injury.

Now, in the present case, the plaintiff still owed a part of the purchase money for the land, but he cannot obtain a conveyance of the land upon the payment of the balance due, because the defendant has disabled himself from conveying, by selling the land to another person. What, then, is the extent of his loss, and what constitutes the measure of his damages? Plainly, the difference between what he owes on the land, and what the land is worth.

Wherefore it follows that the judgment should be reversed and the cause remanded. The other judges concur.