James Paul **HENLEY** et al., Appellants,

v.

Alfred M. **FOX**, Respondent.

No. 22048.

Kansas City Court of Appeals.
Missouri.

Nov. 1, 1954.

John M. Cave, Fulton, for appellants.

Baker & Baker, J. R. Baker, Fulton, for respondent.

SPERRY, Commissioner.

This is a suit for rescission of a contract of purchase of real estate and for fraud. Plaintiffs, the Henleys, recovered judgment in the amount of $477.82, and have appealed.

Plaintiffs are husband and wife. They sought to purchase from defendant, Fox, a certain tract of real estate upon which was situate a four room house. Negotiations culminated in execution of a contract of purchase for a consideration of $3,500, $300 of which was paid in cash and the balance was to be paid at the rate of 6% interest. Plaintiffs agreed to pay all taxes and insurance charges. The land was described by metes and bounds and was to consist of 6½ acres, more or less, plus defendant's interest in an abandoned railroad

right of way described therein. Plaintiffs took possession February 8, 1951, and the contract was signed February 21, 1951. Plaintiffs made all monthly payments for two full years, until February 8, 1953, when they tendered the keys and possession of property back to defendant, and vacated. They paid defendant a total of $1,261.52, including insurance and taxes. However, they received a loan in the amount of $320 to be used in digging a basement and moving the house, which they requested be charged to them.

The petition was in three counts. In the first count plaintiffs set out the contract, alleged their compliance therewith and payment of the above sums thereunder; alleged that the land conveyed was not 6½ acres, but was, in fact, 3.71 acres, plus the railroad right of way; alleged their demand for full compliance by defendant, his failure, and their rescission of the contract. They alleged that the rental value of the property was $600 for the period it was occupied by them, that they owed defendant $320 borrowed money; that they had expended large sums of money and made valuable improvements on the property to the extent of $3,250. They prayed rescission and judgment for $3,595.52.

In the second count, after pleading the contract and the facts as alleged in the first count, plaintiffs alleged defendant's breach of the contract and prayed damages therefor in the sum of $3,595.52.

In the third count they pleaded the above-mentioned facts and certain alleged false and fraudulent representations made by defendant; and they prayed for a judgment against defendant in the sum of $3,500 as punitive damages for fraud.

Defendants answered, admitting the contract as pleaded and the deficiency of land actually contained in the tract, but denied any intentional wrongdoing. He alleged that the parties all understood and knew the physical limits and boundaries of the property but that, due to an error of the scrivener, the quantum of land mentioned in the contract was erroneous, as claimed by plaintiffs. He prayed for reformation of the contract because of mutual mistake. He alleged the rental value of the property to be $40 per month.

On June 27, 1949 Chusa Dunlap conveyed 6½ acres, more or less, described by metes and bounds, to Robert Barnes. In June, 1949, Barnes sold the west 266 feet of the above 6½ acre tract to Harry Findley. Barnes built a four room house on the remainder of the tract and, later, sold same to defendant. However, in the deed from Barnes to defendant, the entire tract, containing 6½ acres more or less, described by metes and bounds, failed to mention that the west 266 feet theretofore had been sold to Findley. The tract adjoined an abandoned railroad right of way which was also mentioned in and conveyed by the above-mentioned deeds, but it is not here important.

Mr. Henley testified to the effect that he and Mrs. Henley looked at the property and then went to see defendant about its purchase; that defendant accompanied them to the property where they viewed it; that he understood that Findley owned an adjoining tract and that he knew he was acquiring only to the Findley line. However, he said that he thought he was acquiring 6½ acres, plus the railroad right of way, bounded on the west by the Findley tract; that they took possession on February 8, 1951, and signed the contract on February 20; that they paid $300 cash, and paid $35 per month for two years; that they also paid insurance of $19 and taxes in the amount of $102.52; that, in the summer of 1952, he bulldozed some brush and a clay dump on the land; that he and Findley put up a fence between them, after having had the line surveyed; that, in August, 1952, he had the whole tract surveyed and learned that it contained only 3.71 acres; that he had told defendant, prior thereto, that there wasn't 6½ acres in the tract but that defendant had insisted that there was; that, prior to the survey he had, with defendant's consent, started to dig a basement and move the house over it but learned of the error in the contract before completion of

that work; that he completed it thereafter; that he also put in a kitchen sink and built-in cabinets. He testified to the effect that the land, with only 3.71 acres, was worth $2,000 when he purchased it but that, when he surrendered possession, it was reasonably worth $4,000. He stated that defendant told him prior to purchase that he saw the house while it was being built; that it was boxed, and had a concrete pillar running from one side to the other, under the middle, upon which it rested; that such statements were utterly false and untrue.

Mrs. Henley's testimony was largely corroborative of the above. She stated that defendant, at all times, insisted that the tract contained 6½ acres, until in late December, 1952, when defendant stated he discovered that the west 266 feet was excepted.

Mr. Ferguson stated that the house was not boxed and that there was no concrete support under it, but only a few loose stacks of rocks and bricks.

Mr. Boyd, a lawyer and abstractor, testified to the effect that he drafted all of the deeds and the contract offered in evidence; that when he prepared the contract between the parties hereto he knew that Barnes had deeded the west 266 feet of this tract to Findley before deeding to defendant, but that he negligently failed to mention that fact in the contract, or to except it from the Barnes deed or from defendant's deed to plaintiffs.

Mr. Findley testified that he purchased from Mr. Barnes the west 266 feet of the tract here involved, in June of 1949, paying therefor the sum of $200, which he considered to be its fair value; that he built a house thereon before plaintiffs moved to the adjoining tract, and that there was also a fence between the properties; that plaintiffs and witness removed the clay dump, which was on the line between their properties, surveyed the line, and built a fence on the line, in July of 1952, that, about three months before trial, defendant gave him a quitclaim deed to the west 266 feet of the tract.

Mr. Barnes stated that he purchased the entire tract and sold to Findley the west 266 feet thereof; that he then built a house on the remaining part of the tract; that the house was well braced and well built; that thereafter he sold the remainder of the tract to defendant, Mr. Boyd having drawn the deed.

Defendant testified to the effect that he was 77 years of age; that he executed the contract herein; that he then knew that Barnes had sold a tract of 266 feet to Findley; that he depended on Mr. Boyd to prepare the contract and left the matter entirely to him; that he did not intend to sell to plaintiffs the Findley 266 feet but that he left it to Mr. Boyd to prepare the contract, including the description, and did not check it; that he thought the tract actually contained 6½ acres, more or less; that he told plaintiffs he believed the house was boxed, but did not know for sure; that he did not tell them that it had under it a concrete support across the middle; that plaintiffs, by their work, have not increased the value of the property; that they dug a basement and another opening; that water stands knee-deep in the basement and in the opening; that the house was damaged in moving it over the basement; that plaintiffs removed a brick chimney and left the brick piled up; that he has not been able to rent the place since it was vacated and cannot rent it without doing something to it; that the bulldozing was a benefit to the property but defendant was not consulted about any of the work done; that, prior to the sale, he rented the property for $40 per month, which he considered its fair rental value; that the value of the property has been decreased by reason of plaintiffs' "improvements."

The court found that the tract involved was well defined and its boundaries known by both parties but that, due to a mistake of the scrivener, or a mutual mistake, the amount of the acreage was misstated; that neither defendant nor Mr. Boyd intended the contract to cover more land than defendant owned; that neither was guilty of fraud; that, had plaintiffs not already re-

scinded and defendant accepted such rescission, the rights of the parties could be adjudged. He rendered judgment for $477.82.

■ Plaintiffs urge error because the court sustained an objection to introduction of testimony tending to prove the *cost* of alleged improvements made by plaintiffs. They cite McFarland v. Cobb, Mo., 64 S.W. 2d 931. That was a suit for damages for *fraudulent representations*. There, defendant had sold a house located partly on an alley and partly on the lot upon which it was supposed to be located. Plaintiffs offered to prove the cost of moving the house out of the alley and onto the lot, which offer was rejected. They also offered to prove the value of the house located, as it was, partly on an alley, and its value had it been located wholly on the lot. This offer was also denied.

The court held that rejection of this testimony was erroneous as it left plaintiffs with *no* evidence of damages; that the cost of moving the house was not the true measure of damages, yet it might have aided the jury in determining the difference in value of the property as it was, and as it was represented to be; that the measure of damages was the difference in its value in its actual condition at the time of sale, and what it would have been worth had it been as represented. However, in the case at bar, the court found that *no fraud was committed* and we cannot say that such finding is clearly erroneous. Consequently the above case is not in point.

Plaintiffs also cite Coffman & Horine v. Huck, 19 Mo. 435. That was a suit for rescission. The court held that a vendor is not liable for improvements put on land to which title fails, absent fraud, but that, in such case, a vendee's outlay for improvements may be *considered* in determining the value of benefits accruing to the vendee from use of the land. The case is not clearly in point on the facts, so as to be controlling in the case at bar.

It is also urged that the court erred in assessing damages in that he failed to apply the evidentiary facts to the proper measure of damages. It is not possible, under the record, to determine just how the court arrived at the amount of the judgment.

■ Where, as here, the vendee rescinds the contract for failure of title, he is entitled to recover all monies paid to the vendor, together with the value of improvements made, after deducting therefrom the fair rental value of the premises. Wright v. Lewis, 323 Mo. 404, 19 S.W.2d 287, 289. Applying that rule to the undisputed evidence, plaintiffs are entitled to recover:

| | |
|---|---|
| Money paid on purchase price.. | $1140.00 |
| Interest | 106.55 |
| Insurance | 19.00 |
| Taxes | 102.52 |
| Value of added improvements | ? ? ? |
| Total | $1367.07 ? |

Plaintiffs received:

| | |
|---|---|
| Loan | $320.00 |
| Interest | 9.90 |
| Rental value or use | ? ? |
| Total | $329.90 ? |

■ The question we must determine is whether the trial court erred in determining the balance in favor of plaintiffs as between the value of improvements and the value of the use.

On both of those questions the evidence was conflicting. Plaintiffs say the value of their use of the property was $478.80. Defendant claims the rental value was $960. Plaintiffs say that the value of the improvements made by them was $2,000; defendant says that, by reason of plaintiffs' "improvements," the property was actually damaged and depreciated in value. Neither party offered any evidence on these subjects other than their own testimony. Determination of that issue, therefore, depends upon the weight and credibility to be given the conflicting testimony of the parties themselves. In such case, we will defer to the judgment of the chancellor; and in

no event can we hold that the judgment is clearly erroneous.

 It is urged that the court erred in not granting a new trial on the ground of newly discovered evidence. The alleged newly discovered evidence was the testimony of a witness who told Mr. Henley, after the trial, in a casual conversation, that he was thoroughly familiar with the state and value of the property at the time of its purchase by plaintiffs, and of its value after plaintiffs had made improvements thereto; and that the value of said improvements was $2,000. It does not clearly appear that testimony to the same or similar effect could not have been obtained from any other person in the community had plaintiffs shown diligence. We cannot say that the court abused his discretion in overruling the motion for new trial.

The judgment should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

BROADDUS and DEW, JJ., concur.

CAVE, P. J., not sitting.