### IN

# THE SUPREME COURT

### OF

## THE STATE OF MISSOURI,

JANUARY TERM, 1855, AT JEFFERSON CITY.*

---

## McQueen, Respondent, *vs.* Chouteau's Heirs, Appellants.

1. Where a bill is filed for the specific performance of a contract to convey land, the court cannot make an order requiring defendants before the court to defend for all parties interested.

2. Under the chancery practice which formerly prevailed, an answer, if responsive to the bill, was to be taken as true, if no replication was filed.

3. Where a tenant disclaims the title of his landlord, and asserts a title in himself, he cannot, when defeated, receive compensation in a court of equity for improvements.

4. A contract to convey to A. a quarter section of land, *to be selected by him,* cannot be assigned to B. so as to entitle him to make a selection.

5. Where a party files a bill in equity for the specific performance of a contract for the conveyance of land, knowing at the time that it is not in the power of the defendant specifically to perform the contract, the court will not, in ordinary cases, decree to him compensation in damages, but will leave him to his remedy at law for a breach of the contract.

---

*The July term, 1854, having lapsed, the cases upon the docket of that term were heard and decided at the present term. Judge Leonard sat in the following cases only at this term, viz: Chouteau Spring Company *v.* Harris. Smith *v.* Ashby. Stone *v.* Corbett. Dowd *v.* Winters. Hull *v.* Dowdall. State *v.* Rich & Rich. State *v.* Upton. All the other cases were decided by the concurrence of Judges Scott and Ryland.

*Appeal from Audrain Circuit Court.*

This was a bill in equity filed in the Pike Circuit Court in 1844, by McQueen against the heirs of Auguste Chouteau, for the specific performance of a contract to convey a quarter section of land.

On the 25th of June, 1829, the administratrix of Auguste Chouteau leased to John J. Grimes, for the term of one year, for the annual rent of one dollar, a league square of land granted to said Chouteau by the Spanish government, but then unconfirmed. The league square comprehended four quarter sections, the grant having been disregarded by the United States surveyors. On the same day, the heirs of Chouteau entered into an agreement under seal with Grimes, by which, after reciting the lease from the administratrix, it was stipulated that, if the title of said heirs should be confirmed by the United States, they would make to Grimes a good title to one of the quarter sections *to be selected by him*, he paying therefor at the rate of three dollars per acre, " one half in cash at the delivery of the deed, and the other half twelve months afterwards." If the claim of the heirs should not be confirmed, but they should be entitled to a preëmption right on account of the improvements made and to be made upon the land, then they covenanted to convey to Grimes one fourth of the land to which they should thus become entitled, at the same rate and upon the same conditions that they should obtain it themselves. Grimes, on his part, covenanted to clear, improve and cultivate enough of each of the four quarter sections to entitle the heirs to a preëmption right to all of them, in case their claim should not be confirmed. He covenanted not to cut any timber, except such as he might want for his improvements and the support of his farm. If the heirs should fail to make a good title to Grimes, according to the provisions of the agreement, upon the tender of the money, then they covenanted to pay Grimes for his improvements according to a valuation by three disinterested persons.

Under this lease and agreement, Grimes entered into possession of the land, and made improvements. In 1832, he sold his improvements to McQueen, the complainant, and assigned to him all his interest in the agreement. McQueen entered into possession and made further improvements. The league square was subsequently confirmed to the heirs of Chouteau. Partition was made among the heirs, and the legal title to the entire tract vested in Thomas F. Smith, one of the defendants, for the benefit of all the heirs.

The bill, after setting out the facts, averred that both Grimes and the complainant had kept all the covenants in the agreement on their part; that the defendant, Smith, had told the complainant that he was willing to comply with the agreement by conveying one of the quarter sections, and that he had a power of attorney from the other heirs to do so; "that complainant informed Smith that he was ready to take the conveyance and pay down one half of the consideration money, but that Smith did not offer to make the deed nor exhibit his power to do so." The complainant, in his bill, made selection of a particular quarter section, and prayed a decree for a specific performance, if it should be found that the defendants could make a good title; if not, he prayed a decree for the value of his improvements and for general relief.

The defendants answered, admitting the agreement, but denying that the complainant had complied with his part of it. They charged that he had committed waste; that Smith, who held the title, had offered to convey to him a quarter section if he would pay down half the consideration money, but that he had neglected to do so; and that, instead of complying with the agreement and purchasing one of the quarter sections, the complainant had claimed title in himself to the whole of them under a pretended and fraudulent preëmption right, and in an action of ejectment brought by Smith, had set up said fraudulent title as a bar. They also alleged that there were other heirs of Auguste Chouteau who had not been made parties to the suit.

At the April term, 1848, upon a petition filed by the complainant, setting forth that, by reason of the death of some of the original defendants and the marriage of others, the parties had become so numerous as to render it difficult, if not impossible, to bring them all before the court, an order was made directing the defendants already before the court to defend for the others.

At the April term, 1849, the cause was taken by change of venue to Audrain county. Upon the hearing at the October term, 1852, the complainant read in evidence the lease from the administratrix of Chouteau to Grimes, the agreement between Chouteau's heirs and Grimes, and the assignment thereof to the complainant. He then proved the value of his improvements. It was admitted that the defendants had conveyed away the land before the filing of the bill, so that it was not in their power to make a title to the plaintiff for any portion of it. The defendants gave evidence tending to show that the complainant never had made a tender of any portion of the purchase money. There was evidence tending to show that the complainant had committed waste upon the land, and evidence to the contrary. The defendants read in evidence the record of an ejectment suit brought by Smith against complainant, for the four quarter sections, in which he had filed a plea of "not guilty" and in which there was a judgment for the plaintiff.

The defendants asked the court to declare the law to be, that the contract between Grimes and the defendants could not be assigned, and that the complainant could not have a decree unless he proved a tender. These declarations were refused, and the court declared that the contract was assignable in equity, and that no tender was necessary, "if the defendants had shown a determination not to perform the contract, or had deprived themselves of the power of performing it."

A decree was rendered in favor of the complainant for $1350 as the value of his improvements, and the defendants appealed to this court.

*Glover & Richardson,* (with *G. Porter,*) for appellants.

McQueen *v.* Chouteau's Heirs.

If the complainant was entitled to a decree, it was either because, at the institution of the suit, the contract set out in the bill was a subsisting one which he had performed on his part, or because it had been rescinded, and the parties, at the time, were mutually entitled to receive back what had been advanced on the faith of it. The decree cannot be sustained on the ground of *performance* by the complainant, because: 1. No tender of one half the purchase money is alleged in the bill. The payment or tender of the money was a precedent condition to the acquisition of an interest in the land he was to select. A court of equity cannot relieve against the non-performance of a precedent condition. (15 Vermont, 757. 2 Sandf. Ch. Rep. 78. Walk. Ch. Rep. 405. 6 J. J. Marsh. 263. 3 Gill & John. 265. 1 J. C. R. 370.) 2. The bill *shows that no selection* was made, as required by the contract. 3. If the averments of the bill were sufficient, they were denied by the answers, which were to be taken as true, no replications having been filed. 4. Even if replications had been filed, the *evidence* showed that there had been no performance.

The decree cannot be sustained on the doctrine of rescision, because the bill was not framed on that view. Even if it had been, the decree is erroneous in not giving to the appellants the benefits which belong to a case of rescision. When a contract is rescinded, the parties must restore to each other what they have respectively received under it. (6 Gill & Johns. 435. 2 Dana, 374. Id. 469. 4 Dana, 507. 1 A. K. Marsh. 434. 5 J. J Marsh. 207. 4 Ohio, 229. 2 J. J. Marsh. 520. 5 Dana, 166.) The decree gives the complainant the value of his improvements, and nothing was allowed to defendants for the use of their land for nearly fifteen years.

McQueen was entitled to *no compensation for improvements*, because he made them in bad faith. He made them for himself, not for the defendants. He attempted to hold the land by his fraudulent preëmption right.

The court erred in making the order that a portion of the defendants should defend for the rest.

Mr. *Broadhead*, for respondent.  1. The contract set forth in the bill is assignable.  (Story's Eq. Juris. p. 366, §1040.) 2. Complainant was not bound by the terms of the contract to tender the money for the quarter section he might select, if he knew the heirs were not able to make him a conveyance of said land, free from all incumbrances. · 3. Complainant was not bound to tender or pay the money until defendants were ready to make him a ·deed ; and if they were not prepared to make him a deed, he might resort to his other alternative under the contract, and claim the improvements.

Scott, Judge, delivered the opinion of the court.

1. The irregularities committed in the progress of this suit are such as cannot be sustained.   When a bill is filed for a specific performance of a contract for the conveyance of lands, we are not aware of any principle of the law governing courts of equity, which warrants the order that was made on the application of the complainant, that the defendants then before the court should answer and defend for all the defendants in the cause.   In some cases, as in the instance of creditors seeking an account of their deceased debtor's estate, for the payment of their demands, a few suing on behalf of the rest may substantiate the suit, and the other creditors may come in under the decree.   So a bill may be brought by a lord of the manor against some of the tenants, or by some of the tenants against the lord, upon a question of common ; or by a parson for tithes against some of the parishioners, or by some of the parishioners against the parson, to establish a general modus.   (Harrison's Chan. 1 vol. 77.)   But no case can be found, in which such permission was given in a suit of the character of that now under consideration.

2. This was a suit instituted before the present practice act went into operation; consequently, it was subject to the laws in force governing chancery practice before that event.   No replications were filed to the answers.   In a hearing on such a state of pleadings, the answer is taken for true, if responsive to the bill.

3. The fact is set up in the answer that McQueen disclaimed the relation of tenant or purchaser under Chouteau's heirs. He withstood an action of ejectment and set up a title in himself. This does not consist with the fact that, as assignee of Grimes, he made the improvements for which he claims compensation. If he had really considered himself as the assignee of Grimes, and claimed as such, it was singular that he should defend the ejectment. Why did he not let judgment go in that action, and, enjoining the proceedings on it, show his equitable title to one of the tracts, and not claim all four of them, as he did? But it was not until he was defeated in a regular action at law, in which he asserted a right adverse to Chouteau's heirs, that he thought about the contract made by Grimes with the defendants. The fact of his taking an assignment avails nothing in opposition to such conduct. If he acted in bad faith towards the defendants, and made his improvements with a determination to hold the land in despite of them, he cannot now complain that they withhold compensation for those improvements.

4. But what is deemed conclusive in bar of the right of the complainant is, the consideration that the contract was not assignable in the way in which it was effected. Chouteau's heirs stipulated to convey one of the four quarter sections, at the choice of Grimes. Now the right of choice is not assignable. It is strictly personal. The contract that the heirs would convey the quarter section selected by Grimes, is different from one to convey the quarter section made choice of by the complainant. Grimes and McQueen could not change the contract, and then insist on its performance by parties to it, who did not consent to the change. The defendants have a right to say, this is not the contract into which we entered. If Grimes had made the improvements on the four quarter sections, which would have entitled Chouteau's heirs to a right of preëmption, then he should have made choice of one of them, and assigned it to McQueen. But by the case as made, it appears that the right of election was assigned to McQueen, which it is clear could not be done.

5. It was admitted on the hearing of this cause that, before this suit was brought, the defendants had conveyed away the land in controversy. They had offered previously to convey to McQueen, on his compliance with the terms of the contract. This he failed to do. In cases similar to this, courts of equity have refused to decree a specific performance of the contract, and have refused to entertain the bill for the purpose of compensating the complainant for damages, but have left him to his action at law on the agreement. In the case of *Hatch* v. *Cobb*, (4 J. C. *(N.Y.)* R. 559,) it is said that it is doubtful how far the court has jurisdiction to assess damages merely in such a case, in which the plaintiff was aware, when he filed his bill, that the contract could not be specifically performed or decreed, as it was a matter of legal cognizance; that though equity, in very special cases, may possibly sustain a bill for damages on a breach of contract, it is clearly not the ordinary jurisdiction of the court. This doctrine is confirmed in the subsequent case of *Kempshall* v. *Stone*, (5 J. C. Rep. 193,) in which it was held that a defendant, who had entered into an agreement with the plaintiff for the sale of a lot, and who, after the time of performance had elapsed, sold and conveyed the land to a third person for a valuable consideration, without notice of the agreement, and before the filing of a bill by the complainant for a specific performance of it, would not be compelled to a specific performance, but that the plaintiff's remedy was at law, for a compensation in damages for the breach of the agreement.

Judge Ryland concurring, the decree will be reversed, and the bill dismissed.