T. C. LOVE, Respondent, v. G. S. VAN EVERY, Appellant.

St. Louis Court of Appeals, June 2, 1885.

1. PLEADINGS—CONTRACTS—SUBSTITUTION.— An allegation that the plaintiff had purchased his co-partner's interest in a certain contract and had continued business thereunder in his own name, is a· sufficient averment of his substitution to the firm's rights as to any after-occurring breaches of the contract.

2. CONTRACTS—ASSIGNMENT.—A partner may purchase his co-partner's interest in a contract which is not for the joint personal services of the two co-partners.

3. ——— RATIFICATION.—A partner, having assigned to his co-partner his interest in a contract, if the other party to the contract, with knowledge thereof, permits the assignee to continue in fulfilment of the contract, this is a ratification thereof.

4. ——— DUE DILIGENCE.—In the absence of any stipulation in a contract as to the time of the delivery of the material to be furnished, the material must be furnished within a reasonable time, due diligence being used for that purpose.

5. ——— ASSIGNMENT.—The assignment of a continuing contract which has been partly performed, does not, of itself, transfer a right of action for a previous breach of the contract.

6. ——— RELEASE—CONTRACT CONSTRUED.—A contract construed and held to apply to but one transaction, and not to have been a release· of the matters in suit.

APPEAL from the Greene County Circuit Court,. GEIGER, J.

*Affirmed.*

*Massey & McAfee*, for the appellant. Contracts such as that sued on are not assignable. *Ramey v. Grim,* ·28 Mo. 310 ; *Landen v. McCarthy,* 45 Mo. 106 ; ·*Clark v. Cable,* 21 Mo. 223 ; *Leahy v. Dugdale,* 27 Mo. 437.

*Goode & Cravens*, for the respondent. This was not a contract of personal trust, and was assignable

even without defendant's consent. *St. Louis v. Clemens*, 42 Mo. 69; *Devlin v. Mayor*, 63 N. Y. 8. A subsequent ratification of a change in a contract is equivalent to a previous authority to make it. *Workman v. Campbell*, 57 Mo. 53; *Martin v. Judd*, 60 Ill. 78; *Paul v. Berry*, 78 Ill. 158; *Dow v. Spenny*, 29 Mo. 387; *First Nat. Bank v. Gay*, 63 Mo. 33; *Stewart v. Bank*, 40 Mich. 349; *Stover v. Flock*, 30 N. Y. 64. The memorandum agreement of December 30, was not good as a release of damages, had it been so designed. It was not under seal. *Mitchell v. Hawley*, 4 Denio. 417; *Rowley v. Stoddard*, 7 Johns. 207.

LEWIS, P. J., delivered the opinion of the court.

The plaintiff and G. W. Freeman were partners in business, and, in May, 1882, entered into a written contract with the defendant for the furnishing of cross-ties along the line of the Kansas City, Springfield and Memphis railroad, for a defined extent of about nine miles. The testimony tended to show that the writing was retained in the possession of defendant and was by him lost, so that it could not be produced at the trial. Parol proof of its contents tended to show that Love and Freeman were to deliver the ties at the price of twenty-five cents each, and were to have the exclusive right of furnishing them, up to the number of fifty thousand, within the defined limits. No time was specified for the performance. It was stipulated that the defendant would not buy ties from any other person or persons, within the said limits, until the completion of this contract. Alleged breaches of this stipulation constitute the foundation of the present suit. The plaintiff claims, by assignment from his partner, as sole owner of the rights acquired by them under the contract. There was a judgment for the plaintiff.

The petition avers that, in July, 1882, "plaintiff purchased the interest of the said G. W. Freeman in said contract, and thereafter continued said business of buying and selling ties under said contract, in his own

name." This is sufficient averment of the plaintiff's substitution to the rights of the firm, at least as to any breaches of the contract occurring after his purchase. There was no need of Freeman's introduction as a party to the suit. Nor was it necessary that the petition should set forth the particulars of damages resulting to the plaintiff from alleged breaches. That belonged to the evidence, and not to the pleading. The acquisition of Freeman's rights by Love did not involve the making of a new contract, and no new consideration was necessary. The objections against the sufficiency of the petition on these points are unworthy of serious attention.

The defendant contends that there was no valid assignment of Freeman's interest in the contract to the plaintiff, for want of a sufficient consent thereto by the other contracting party. There is no ground for this contention. It would be hard to say that the contract was for the joint personal services of Love and Freeman, on account of their combined skill, knowledge and experience in the art of furnishing ties, rather than a mere contract for work and labor which might be done as well by one as by another. *Leahy v. Dugdale*, 27 Mo. 439. But, aside from this, the record abundantly shows that the transfer was both consented to and ratified by the defendant. The attention of the jury was directed to this question by an instruction which might have been given in much stronger terms for the plaintiff, without any strain upon the evidence. The hypothesis submitted to them in the plaintiff's behalf was, in effect, that, after the making of the contract, "the said firm of Love and Freeman was dissolved, and by the terms of such dissolution the plaintiff succeeded to all the rights of said firm in and under said contract, and that the plaintiff, with the knowledge of defendant and without objection, proceeded and continued in the fulfilment of said contract, etc." This hypothesis, as being sufficient to bind the defendant to the effect of the assignment from Freeman to Love, is fully sustained by the decision of our supreme court in *City v. Clemens* (42 Mo. 69). But, were it proper for us to weigh the testimony, we might

easily say that the evidence in the present record would have fully justified a finding that the defendant expressly consented to the transfer, and ratified it by repeated declarations, after it was made. Objection is made to the words in the instruction, "and by the terms of such dissolution the plaintiff succeeded to all the rights of said firm in and under said contract," as submitting a question of law to the jury. The words might as well have been omitted, but it was impossible for their presence to do any harm, since no question was raised about the operation of the transfer, as between Love and Freeman.

There was testimony tending to show that the defendant bought many hundreds of ties from persons other than the plaintiff in violation of the plaintiff's claim of exclusive right under the contract, and that he paid for them prices higher than it was possible for the plaintiff to pay without loss on his undertaking, so that the plaintiff was thus seriously hindered and damaged in his efforts to perform the contract on his part. The defendant claimed, by way of defence, that his obligation to the railway company required him to procure and deliver ties rapidly, of which fact the plaintiff was aware, and that the plaintiff was so lacking in diligence, and so remiss about keeping up a proper supply, that the defendant was compelled in his own defence to procure ties from other persons. As already stated, there was no stipulation in the contract as to the times of the plaintiff's deliveries, but the court gave to the jury, at the defendant's instance, the following instruction: "That the legal meaning of the contract of May 20, between Love & Freeman and defendant is, that the ties were to be delivered with due diligence, whether such provision was written in said contract or not; and if you find that Love & Freeman, or Love, did not prosecute such work with due diligence, then defendant had the right to procure ties on that territory from other parties, notwithstanding the contract may have been exclusive, as claimed by plaintiff. Due diligence would require that the ties should be procured and delivered as fast as they reason-

ably could be, by paying fair and reasonable prices therefor. And plaintiff would have no legal right to delay the procuring of ties by any attempt or desire to realize unusually large profits by reason of the monopoly he claims to have had." This instruction secured to the defendant all that he could possibly claim under the defence stated. There was substantial testimony to sustain the finding of the jury, under this instruction. Nothing further need be said in answer to the defendant's complaints on this point.

It is further insisted for the defence, that there was a settlement and release by the plaintiff to the defendant of all the matters complained of in this suit. The only evidence of such a settlement and release appears in a writing signed by the parties, in the following terms :

"I have this day released to G. S. Van Every all claims on 1,343 ties and 118 culls, upon which I had advanced cash and merchandise to the amount of $212.71, which said Van Every has paid me, and I have accepted said settlement of Adams' account and given up my claim on said ties upon the agreement of said Van Every that he is to advance or loan $500 to Mr. Long, of Seymour, or Messrs. Matney & Crabb, of same place, to enable them to purchase my stock of goods and tie contract at Cedar Gap, Wright County, Mo., and that he will recognize either of these parties, with whom I may consummate a trade, in my stead, in the tie contract now in existence between me and said Van Every, which contract gives me the right to buy in the territory known as Cedar Gap. Said Van Every not to be held to this agreement of advancing $500 to said Long, unless said Long gives a lien or mortgage upon his store-house in Seymour and stock of goods at Cedar Gap and Seymour, to secure the payment of said advancement in connection with a balance of seven hundred dollars that may be due me, said security to be satisfactory to all parties.

"Price of ties to be 25 cents each and culls 11 cents each.

"This Dec. 30, 1882.

"T. C. LOVE.
"GEO. S. VAN EVERY."

This paper on its face, and all the testimony offered in explanation of it, show that the release and settlement applied solely to one transaction, which the learned counsel for the defendant introduce in their brief as a "wrangle over the business because of a lot of ties each party claimed to have bought of one Adams." It does not appear in the record that this transaction was one of the subjects of the plaintiff's claim for damages. But it seems to be argued that, because the instrument looks to a possible future sale of the plaintiff's contract to third parties, which sale, if consummated, the defendant is to ratify and approve, besides rendering some aid to the possible purchasers, therefore, the writing is to be regarded as in present settlement of all existing differences. We fail to find any logical connection between the two members of the proposition.

It is objected that damages may have been improperly assessed by the jury on account of breaches which occurred before Love acquired Freeman's interest in the contract. The hypothesis, whatever may be the law applicable to it, has no support in the record. Love's purchase of Freeman's interest was made on July 26. All the breaches complained of, as the plaintiff testifies without contradiction by anyone, occurred "in the latter part of August and September." The court's instructions directed the attention of the jury to damages sustained by "the plaintiff," and not by Love and Freeman. There is some inconsistency between the defendant's position in this connection, and the one which will next be considered. In the one case, it is to be inferred, from the same sort of premises, that the assignee did not acquire the right of action for antecedent breaches, and in the other, that he did.

It is complained that the court erred in giving the following instruction for the plaintiff: "There is no evidence in this case upon which the jury can find that the plaintiff has at any time either assigned, abandoned, or in any manner settled his supposed cause of action for alleged violation of said contract, charged against defendant in said petition."

By way of showing that there was substantial testimony before the jury, tending to prove that the plaintiff had surrendered or assigned his cause of action, the appellant refers us to the writing of December 30, above copied, and to sundry statements of the witnesses relating to the plaintiff's transfer of his contract to Matney, or Matney and Crabb. As to the writing, it is an absolute nullity for the purpose supposed. So far from parting with any interest or right under the contract, the plaintiff does not, in that instrument, even promise so to do. He "may consummate a trade" with one of the parties named, but does not determine which it shall be if either. It is useless to dwell on the utter barrenness of this paper, as a surrender by the plaintiff of anything beyond his claim upon certain ties and culls therein particularly mentioned. The oral testimony relied on consists in repeated statements to the effect that the plaintiff "sold to Matney and Crabb"—"sold out"—the con-tract was "finally sold and delivered to Messrs. Matney and Crabb." Mr. Love went out—was released from it—the defendant "furnished to Matney and Crabb money to buy Love out of his store and tie contract, and they did buy out Love." Matney "bought out Love in Cedar Gap in January, '83, and got his tie contract.....bought Love out * * * was to pay for stock of goods, * * * was not to pay him anything for the tie contract, * * * was to have the tie contract together with the stock of goods at the invoice price, with ten per cent. off * * * would not have bought the goods without the tie contract."

If the defendant himself is to be believed, all these expressions mean, not that the plaintiff transferred any contract right whatever to Matney, but that he simply withdrew, leaving Matney and Van Every to enter into a new arrangement. The essence of the contract was the exclusive privilege of purchasing ties from the first producers within the nine mile territory; since that enabled the plaintiff to control the prices, so as to secure a margin of profit on his deliveries to the defendant. Both Love and Van Every testified that, in the transaction with Matney, this exclusive right was abolished. It fol-

lows that Love's contract, as made with the defendant, and here sued upon, was never sold or assigned to Matney at all, but was simply extinguished; whereupon Matney proceeded to sell ties to the defendant, without any reference to Love or his defunct contract. But let it be conceded that the plaintiff sold and assigned his tie contract to Matney. How does it appear in this fact alone, that he also parted with the right to sue for damages already suffered from the defendant's encroachments? The argument for defendant assumes that there is a presumption of law to that effect. The contrary is true by all reason, analogy, and precedent. We are not shown a single case, nor have our own researches discovered one, in which it is held that the assignment of a contract right to render services, for compensation, carries with it the right of action for antecedent violations, without an express stipulation to that effect. On the other hand, the reports are full of decisions whose underlying principles are irreconcilable with such a view. The leading idea of the argument seems to be that, since the assignee has become owner of the whole contract, therefore, he is invested with all the rights that have attached to it, whether in the past or the present. If this conclusion be sound enough for unlimited application, the assignee should be entitled to recover all the profits from the contract which have been previously realized and pocketed by his assignor.

In *Gwin v. Biel* (70 Ind. 505), it is held that "an assignment in writing as follows: 'For value received, I hereby assign, transfer and set over to J. G. all my right, title, claim, and interest in and to the rents and profits of the farm in Clark county,' * * * only operates to assign, and transfer to such assignee, the rents and profits to accrue after the date of its execution, and not to invest him with any title, or claim to rents or profits which had already accrued." "The assignment of a judgment and execution conveys away the plaintiff's interest in the further enforcement of it, but not his interest in money which the sheriff has previously collected on it." *Robinson v. Towns*, 30 Geo. 818. In states where the

common law limitations on assignments have been preserved, it is held, that a lessor's assignment of the reversion will carry the right to sue for rents thereafter accruing; but, even though there be an assignment in express terms of rents already accrued, the assignee can not sue for them in his own name. *Burden v. Thayer*, 3 Metc. (Mass.) 76; *Peck .v. Northrop*, 17 Conn. 217; *Willard v. Tillman*, 2 Hill, 274. It seems pretty safe to say that an assignment which the common law would not recognize, and which could only be available in equity, ought not to depend upon mere implication, but should always appear in express terms. A title bond for real estate was thus assigned: ''For value received, I hereby assign to J. Van Driel all my right, title, and interest to the real estate described in the within bond, and held by me by virtue of said bond.'' It was held that this vested in the assignee the rents falling due after the assignment, but not those which had already accrued. *Van Driel v. Rosierz*, 26 Iowa 575. The case of *U. S. v. Hickey* (17 Wall. 9), illustrates the converse of our main proposition. A lessor assigned all his ''right, title and interest'' in the lease held by him from another, and '' authorized the assignee to sue for, collect, and recover the lease, and the rights to the rent reserved under the same,'' declaring ''it to be distinctly understood '' that it is the object and purpose to put the assignee in his place and stead, ''so far as concerns his rights under the lease.'' This was interpreted to be an express transfer of the rents previously accrued, and on that specific ground the assignment was so enforced. Another case in which an assignment was held to convey the right of action for an antecedent breach, similarly emphasizes the general rule to the contrary. *Short v. Simpson* (1 L. R. C. P. 248), was an action by the assignee of a bill of lading for a breach which had occurred before the assignment. It was admitted that there could be no recovery on common law principles, however effectual the assignment might be for other purposes. But the law had been changed by statute 18 and 19 Vict., c. 111, which enacted that '' every consignee of goods named in

a bill of lading to whom the property in the goods therein mentioned shall pass upon or by reason of such consignment or endorsement, shall have transferred to and vested in him all rights of suit,   *   *   *   as if the contract contained in the bill. of lading had been made with himself."

It seems pretty clear, then, that in this case there was no transfer by the plaintiff to Matney of the right of action for antecedent violations of the contract, unless such transfer was made in express terms. And as no shadow   of evidence of any such express transfer appears in the record, the instruction complained of was properly given.

Objection is made that the verdict for eleven hundred dollars in the plaintiff's favor was excessive. There was uncontradicted testimony to the effect that the plaintiff's average profit on the ties, furnished at twenty-five cents apiece, was ten cents per tie; until the defendant, by paying higher prices to other persons than the plaintiff was paying, compelled the plaintiff to pay higher prices also, and finally made it impossible for him to purchase them at all, unless at a positive loss. That, when he was thus driven to give up his contract, the plaintiff had furnished not more than 15,000 ties, and would have furnished the additional 35,000, but for the defendant's interference in the manner charged. The contract secured to the plaintiff a right to furnish 50,000 ties in addition to the first, on the same terms. A witness testified: "Van Every told me he had bought, or was going to buy the Glass ties, and I remarked, 'that is on Love's territory.' He then said that he had never given Love the contract, or a copy of it, and that, never having given the contract, or a copy of it, to Love, he would buy ties from whom he pleased." Taking all these facts together, it would appear, rather, that the jury treated the defendant with remarkable leniency; and that a much larger verdict might well have been defended against the charge of excessiveness.

Counsel for the defendant appear to have exhausted

all possibilities in the way of multiplying points for a reversal; but we find none of them that it would be more profitable to consider, than those already noted. Upon a careful examination of the whole record, we think that the case was fairly tried, and that the defendant has no ground for a complaint that the result was not reached in due conformity with law. All the judges concurring, the judgment is affirmed.