RYAN, *Appellant,* v. DUNLAP *et al.*

Division Two, October 17, 1892.

1. **Equity:** SPECIFIC PERFORMANCE: DAMAGES. Where a vendor of land is unable, from lack of title when the contract was made, to complete it, equity will compensate the vendee in damages provided he commenced his suit in good faith without knowledge of such inability of the vendor to make title.

2. ———: ———: ———: LIEN. A contract for the sale of land provided if the title proved defective beyond remedy the contract should be void and the payment made on the purchase price should be returned, and that, if the vendee on his part did not make the full cash payment required by the contract, the sum paid by the vendee should

be forfeited. The vendor had no title to part of the premises. The vendee sued for specific performance which the court refused and gave judgment for defendants. *Held*, that plaintiff was entitled to judgment for the payment made by him with interest and costs, and to have the same declared a lien on the land.

3. ———: ———: PURCHASER WITH NOTICE. Persons who purchased from the vendor with notice of the contract take subject to the vendee's equity.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED.

*W. J. Ward* for appellant.

(1)  Ryan had the right to demand an allowance for the shortage in the lot of ten feet, and was not put in default by doing so. *Hill v. Buckley*, 17 Ves. 394; *Jones v. Schackelford*, 2 Bibb. 410; *Collins v. Smith*, 1 Head, 251; *Wood v. Griffith*, 1 Swan. 54. (2) Mrs. Dunlap, having contracted to convey more land than she had, was at once in default and could not declare a forfeiture. Many courts hold that she could not enforce specific performance at all, and none that she could do so without an abatement in the price. Pomeroy on Contracts [1 Ed.] sec. 450; *Jones v. Schackelford*, 2 Bibb. 410; *Wood v. Griffith*, 1 Swan. 54. (3) She did not refund to Ryan the $1,000 payment, and he has the right to enforce the contract. *Mastin v. Grimes*, 88 Mo. 490; *Snyder v. Spaulding*, 57 Ill. 480. (4) Mrs. Dunlap being first in default on her contract (her property being incumbered and remaining so) she could not declare a forfeiture. *Bishop v. Newton*, 20 Ill. 175; *Wallace v. McLaughlin*, 57 Ill. 53; *Snyder v. Spaulding*, 57 Ill. 480; *Craven v. Hale*, 27 Ill. App. 275; *State v. McCauley*, 15 Cal. 459. (5) This court, in an equity case, is not bound by the opinion of the lower court as

to the facts, but will examine the testimony for itself. *Benne v. Schnecko*, 100 Mo. 258; *McElroy v. Maxwell*, 101 Mo. 308. (6) The court, under the prayer for general relief, has a right to render such a judgment as it thinks the plaintiff entitled to, or a money judgment. *Holland v. Anderson*, 38 Mo. 55; *Hamilton v. Hamilton*, 59 Mo. 232; Story on Equity Pleading, sec. 40. (7) So it can give a money judgment and declare it a lien on the property. *Price v. Palmer*, 23 Hun, 504; *Hanbury v. Litchfield*, 2 M. & K. 634; *Gupton v. Gupton*, 47 Mo. 48, 49.

*Warner, Dean & Hagerman* for respondent.

(1) The contract lacks mutuality of obligation and remedy and cannot be specifically enforced. *Glass v. Rowe*, 103 Mo. 513; *Mastin v. Halley*, 61 Mo. 196; *Morse v. Rathburn*, 42 Mo. 602; *Bradford v. Simpson*, 10 Iowa, 35. (2) The contract is too indefinite and uncertain to be specifically enforced. No one is named to act as trustee in the deed of trust provided for, and the number of notes to be given for the deferred payments is not stated. *Holliday v. Hubbard*, 45 Minn. 333; *George v. Conbam*, 38 Minn. 338. (3) The trustee in a deed of trust is the agent of both parties, and occupies a position calling for the highest degree of impartiality, integrity and good faith. *Sherwood v. Saxton*, 63 Mo. 78, 82; *Long v. Long*, 79 Mo. 644. He occupies a position of personal trust and confidence, and cannot delegate his authority unless expressly authorized by the deed. *Graham v. King*, 50 Mo. 22; *Landrum v. Bank*, 63 Mo. 48; *Spurlock v. Sproule*, 72 Mo. 503; *St. Louis v. Priest*, 88 Mo. 612. The contract, having named no one to hold this important trust, is so uncertain in a material respect as to be incapable of specific enforcement. (4) Under the allegations of the bill and the

evidence in the record, the court cannot enforce this contract, because, as to part of the property, it is beyond dispute that Mrs. Dunlap's title was "defective beyond repair;" and in that contingency it is provided that the "contract shall be void, and the $1,000 hereby paid shall be returned to said purchaser." *Williams v. Edwards*, 2 Simons, 78; *Bradford v. Simpson*, 10 Iowa, 35; Pomeroy on Specific Performance, sec. 439, p. 506, note 1. (5) The defendants, Consaul, McLane and National Loan & Trust Company, had no actual notice of any claim of plaintiff to the property. Plaintiff saw the improvements as they were being made on the property and cannot recover except upon terms of reimbursing the above defendants for their outlay upon the property. Story on Equity Jurisprudence [11 Ed.] secs. 385, 387, 388, 799*a*, 799*b*, 1237, 1238, and notes; Revised Statutes, 1889, secs. 4645–4654, pp. 1062, 1063; *Dothage v. Stuart*, 35 Mo. 251; *Stump v. Hornback*, 94 Mo. 26; s. c., 15 Mo. App. 367. (6) Under the prayer of the petition, the plaintiff cannot have a money judgment. His remedy, if any, is an action at law against Mrs. Dunlap. *Williams v. Edwards*, 2 Simons, 78; *Rush v. Brown*, 101 Mo. 586; *Yost v. Devault*, 9 Iowa, 60; *Southworth v. Hopkins*, 11 Mo. 331; *Veth v. Gierth*, 92 Mo. 97. (7) Mrs. Dunlap's codefendants bought with knowledge of Ryan's rights.

GANTT, P. J.—This is a suit in equity for the specific performance of the following agreement:

"KANSAS CITY, Mo., June 17, 1887.

"Received from Lewis C. Ryan, purchaser, $1,000 as part payment of the purchase money for all of lots 1, 2, 3, 4 and 5, block 'F,' Lockbridge's addition to the City of Kansas, state of Missouri, as shown on

recorded plat of same, being two hundred thirty-seven and one-half feet on Troost avenue by one hundred and fifty feet on Twenty-second street (the southeast corner), this day sold to Lewis C. Ryan, by McElroy & Lesueur, agents for Mrs. M. L. Dunlap, for $23,750, payable as follows:   $10,000 cash, of which $1,000, hereby paid is a part, and a balance of said cash payment to be paid in thirty days after delivery by owner of a complete abstract of title to said purchaser of said property. The balance of said purchase money to be paid as follows:   $6,575 in one year from delivery of deed; $6,575 in two years from delivery of deed; interest at eight per cent.; interest payable semi-annually.   All notes to be secured by deed of trust on said property. The said Mrs. M. L. Dunlap hereby agreeing to furnish a complete abstract of title within ten days from date, and certificates of judgment in all the courts of record, together with a warranty deed of said property.

"Should the title prove defective beyond repair in a reasonable time, this contract shall be void, and the $1,000 hereby paid shall be returned to said purchaser. All city and county taxes for 1887 to be paid by the seller.

"It is further understood that, if said purchaser does not make a cash payment of $10,000 as above stipulated, the $1,000 payment herein is to be forfeited as liquidated damages for the breach of contract.

"MARY L. DUNLAP, (L. S.)
"LEWIS C. RYAN, (L. S.)"

There are no questions as to the admission or rejection of evidence.   The error assigned is that under the law and the evidence the finding should have been for plaintiff, whereas the trial court gave judgment for the defendant.   Plaintiff relies upon three propositions to work a reversal.

By reference to the memorandum, it will be seen that the real estate Mrs. Dunlap agreed to convey was five lots with a frontage of two hundred and thirty-seven and one-half feet on Troost avenue, by one hundred and fifty feet deep on Twenty-second street, in Kansas City. Prior to the making of this agreement, Mrs. Dunlap owned the five lots, and they were one hundred and fifty feet deep, but just previous to this contract, the city, for the purpose of widening this avenue, had condemned a strip ten feet wide off of the Troost avenue front or side, so that the tract was only one hundred and forty feet deep when she signed the agreement. In her answer and on the trial she made the defense that this was a misdescription of the scrivener, and that prior to agreeing to purchase the plaintiff had gone over the lots, saw the street improvement, and had full notice that the lots were only one hundred and forty feet deep.

It appears from the testimony of Holtz that he was in the employment of McElroy & Lesueur, real-estate agents; that he induced Mrs. Dunlap to permit him to list her property on the firm books of McElroy & Lesueur. The description she gave him was southeast corner of Twenty-second and Troost. He told her he had a customer. It turns out plaintiff was his customer, and had been looking at the property. The plaintiff says his attention was called to it by this firm, and after thinking it over some time decided to buy it. Mrs. Dunlap furnished plaintiff her abstract, and he submitted it to his attorney. His attorney pointed out these defects in the title as shown by the abstract:

*First.* That the patent from the state to the original patentee did not appear in it. *Second.* That it was incumbered with mortgages to amount $5,100, bearing eight per cent. *Third.* That the contract called for a tract two hundred and thirty-seven by one

hundred and fifty feet. The condemnation takes off ten feet, leaving it only one hundred and forty feet deep. *Fourth.* That the abstract did not show an order of the county court authorizing E. T. Peery, administrator of Graham, to sell and convey the land.

This opinion was given July 12, 1887.

Mrs. Dunlap's attorneys procured the order of the county court, and the patent to be placed on the abstract. She and her attorney then had a conference with plaintiff about the incumbrance. As he was to pay her $9,000 cash, in addition to the $1,000 earnest money, the incumbrance was not insisted upon as a defect. The defendant and her attorney testify positively plaintiff said he would deduct the incumbrance from the cash payment. Plaintiff testified: "I told her I might agree to take the incumbrance out of the cash payment. I didn't bear down on the matter of the incumbrance." This accords so entirely with the almost universal custom, that we take it it is useless to devote any more time to it. So that, on the twenty-seventh of August, 1887, there was but one matter of difference between these parties, and that was with respect to the depth of the lots. The trade had now been made since June 17. All the defects that could be cured by Mrs. Dunlap had been corrected, and she and her attorney called upon plaintiff to know whether the abstract was now satisfactory, and if he intended to carry out the trade. And here there is a conflict. They all agree that Mrs. Dunlap and Mr. Nearing went to plaintiff's office in August to see him about the trade. Plaintiff says I told Mrs. Dunlap: "I am entitled to something for that shortage, there is ten feet shortage. If we can agree on that, the incumbrance will not be in the way. She said she would not allow anything." Then he said: "I would not take it without

an allowance. I told her, I would hold her to her contract if I could."

On the part of the defendant, Mr. Nearing testified that he went to Mr. Downs, plaintiff's attorney, and told him, soon after seeing his opinion, that he would complete the abstract except as to the ten feet which could not be corrected. Downs put him off without a definite answer. He then saw Ryan, and he said he couldn't tell till he saw Downs, and that they thus referred him to each other for several days. Whereupon he and Mrs. Dunlap went to Ryan's office and told him they wanted to have the matter settled. Nearing says, "I asked him if we would make a reduction of the property if he would take it, and he *made no reply*." "He would not say he would or would not." Thereupon he says he went to his office and prepared and served the following notice on plaintiff on August 31, 1887.

"KANSAS CITY, Mo., August 31, 1887.
"*Mr. L. C. Ryan.*

"DEAR SIR:—Please take notice that we are ready to close the matter of the contract entered into between us on June 17, 1887, for the conveyance of lots 1, 2, 3, 4, 5, block 'F', Lockbridge's addition to Kansas City, Missouri, as per contract, and unless the same is complied with on your part within ten days we shall retain the $1,000 advanced by you to me as damages.
"Yours truly,
"MARY L. DUNLAP.
"Per C. H. NEARING,
"Attorney."

Plaintiff made no answer to the notice whatever. Mrs. Dunlap confirms her attorney's account of plaintiff's failure to make any offer to comply with the contract after her interview with him August 31, 1887.

The trial court on this evidence found for defendants. Plaintiff asks us to ignore that finding and give him a decree.

In *Benne v. Schnecko*, 100 Mo. 250, this court said: "When there is conflict of testimony, or where the testimony is evenly balanced and the finding of the chancellor appears to be correct, then we will so far defer to his finding as to sanction it by our affirmance, 'that and nothing more.'"

In this case there is a direct conflict on this material point. It stood confessed that the lots were only one hundred and forty feet deep. Mrs. Dunlap could only convey subject to the easement of the highway, Troost avenue. This was now the only point of difference. It now appeared that as to this ten feet "the title had proved defective beyond repair in a reasonable time." Under these circumstances, the contract declared the agreement should be void and the $1,000 restored. Now could they estimate the shortage? If they could, it could be caried out *pro tanto*. If Mrs. Dunlap declined absolutely she would be in fault and should restore the $1,000. If Mr. Ryan declined to modify it in any manner, then it was impossible to perform it. The chancellor evidently found plaintiff declined to do anything.

We think the evidence justifies the court in refusing a specific performance so far as we can weigh the evidence. Of course the chancellor had these parties before him and could determine their credibility better than we can. But while we accord to the trial court the right to believe or disbelieve the witnesses, and while we think it properly refused a specific performance under this evidence, yet it does not follow that plaintiff is wholly without remedy upon the uncontroverted facts of this case. He paid his $1,000 to Mrs. Dunlap for the land described in her contract. It appears her

attention was called to the misdescription before the contract was finally consummated. Making all due allowances for her ignorance of conveyances, yet when her title failed and plaintiff declined to take the lot unless they could agree on the shortage, then by his contract he was entitled to have his money refunded. To this point he was not in default.

And, notwithstanding there is now a conflict between him and defendants as to whether he declined to estimate the shortage, and though he may have mistaken his equity in asking for a specific performance of the contract when it was impossible for Mrs. Dunlap to convey it, and although under her contract she might not be liable to damages, other than interest, still there is no principle of equity that will permit defendant, Mrs. Dunlap, to hold this money for a title she never conveyed, and was confessedly unable to convey in accordance with her agreement. Hence, though plaintiff declined to take the title on account of the very material deficiency in the lots, and although the lots might have been worth as much after the street was widened as before, it was not the exact thing he had bargained for, and under his contract he had the right to elect not to take it. Now the burden of defendant's answer is that he would not take the property owing to the shortage. Grant this, there was nothing in the contract that authorized her to keep his purchase money when all the evidence agrees the lots were deficient in depth. Upon his election not to take, his contract secured to him a return of his money, and, for every day defendant then kept it, he was entitled to interest on it.

Here again, defendant was at fault. She at once made claim to the money. No demand was necessary on the part of plaintiff in view of her expressed determination to hold on to it. There are many well-consid-

ered cases that hold that if a vendor is unable from want of title at the time of making the contract to carry it out a court of equity will award damages to the vendee provided he commenced his suit in good faith without knowledge of the disability. 3 Pomeroy on Equity Jurisprudence [2 Ed.] sec. 1410, note 1; *McQueen v. Chouteau's Heirs*, 20 Mo. 222; *Hamilton v. Hamilton*, 59 Mo. 232.

Here the plaintiff knew of the defect when he commenced his action. We think his right was to receive back his purchase money with interest. The interest being in this case the measure of his damage. His equity was that of a vendee who has prematurely paid his money before receiving his conveyance. In such cases the vendor holds the money as a charge on the lands agreed to be sold and conveyed. No rule is better settled than this. *Stewart v. Wood*, 63 Mo. 252; 2 Jones on Liens, secs. 1105, 1106.

The judgment of the circuit court is reversed with directions to enter a judgment for plaintiff for $1,000 with interest thereon at six per cent. from August 31, 1887, until paid, and that the same be declared a first lien on said real estate; that the other defendant hold said real estate with full notice of said contract, and subject to said lien, and we award plaintiff his costs in both courts. All concur.