## J. T. HALL et al., Respondents, v. H. R. CHITWOOD, Appellant.

### Kansas City Court of Appeals, May 16, 1904.

1. **MINES AND MINING: Assignment: Contract for Services.** Whether a contract to sink a shaft with indemnity was for such services that it could not be assigned so as to bind the indemnitors, *quaere*.

2. **——: Guarantee: Definitions: Extra Good Ore.** A contract of indemnity guaranteed for a certain distance "dark flint with extra good ore." *Held*, that under the connection of the words and the situation of the parties the term "extra good ore" meant not only quality but extra good ore in quantity sufficient to mine.

3. **——: Indemnity: Sinking Shaft: Drift.** Under a contract to indemnify the plaintiff for sinking a shaft in case certain quantities of ore were not found, the plaintiff may recover for sinking the shaft, but not for driving a drift from the foot of the shaft to a test hole formerly sunk.

4. **——: Guarantee: Extra Good Ore: Instruction.** A contract guaranteed "seven feet of dark flint with extra good ore." *Held*, an instruction that this meant that the drill had passed through a deposit of extra good ore and that there were seven feet of the same is error.

5. **——: Indemnity: Drill Hole.** An agreement to indemnify for sinking a shaft in case certain quantities of ore were not found is held to refer to a drill hole and guarantees that the drill passed through extra good ore for the agreed depth and not that such conditions would show up in the shaft when sunk.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

REVERSED AND REMANDED.

*Thomas & Hackney* for appellant.

(1)   The written contract of guaranty sued on by the plaintiffs is personal to E. J. Winslow. It does not run to his heirs or assigns. The condition is that if Winslow should sink a shaft on the drill hole and the same was not found as good as represented the defendant would pay Winslow all expense of sinking the shaft. The defendant, in making this contract, placed confidence in the judgment, business experience and skill of Winslow and under such circumstances a contract like this when unexecuted is clearly non-assignable. Butts v. McMurry, 74 Mo. App. 526; Lansden v. McCarthy, 45 Mo. 106; Boykin v. Campbell, 9 Mo. App. 495; McQueen v. Choteau, 20 Mo. 222; Smelting Co. v. Mining Co., 127 U. S. 379.   (2)   The trial court also erred in overruling the defendant's objection to the introduction of the written assignment from Winslow to Reed and Shackleford for the same reasons.   (3)   The court erred in overruling the defendant's demurrer to the evidence. By the terms of the written guaranty the defendant guaranteed that the log of the drill hole was correct as stated in the contract. That is, that the record of the drill hole had not been falsified and was not fictitious. There was a total failure of proof on the part of the plaintiffs to show that the drill record was not correct and a total failure to show that the drill in passing from 110 feet to 117 feet did not pass through dark flint with extra good ore, as stated in the log of the drill. On the contrary the affirmative proof was that the drill did pass through that character of ground. (4)   The court erred in giving instruction number one on behalf of the plaintiffs.   (5)   The second instruction given by the court for the plaintiff is erroneous in defining the terms of the written contract. By this instruction the court, in substance, told the jury that there must be seven feet of solid ore. This instruction wholly left out of consideration the statement in the contract and drill record that there was dark flint in this same seven feet.

*Howard Gray* for respondents.

(1)   The contract in this case is clearly assignable. Leahy v. Dugdale, 27 Mo. 437; State v. Clemens, 42 Mo. 69; Love v. Van Every, 18 Mo. App. 196; Mirror Co. v. Galvin, 55 Mo. App. 412; Construction Co. v. Prather's Admr., 58 Mo. App. 487; Devlin v. Mayor, 63 N. Y. 8; Munsell v. Lewis, 2 Den. N. Y. 224; Gaston v. Plummer, 14 Conn. 343; Galey v. Mellon, 33 Atl. 560, 172 Pa. St. 443; Seers v. Conover, 33 How. Prac. 324; Parsons v. Loan Assn., 29 S. E. 999.   (2)   The next point of complaint is that the petition does not state facts sufficient to constitute a cause of action, because it asks recovery for sinking the shaft and driving the drift.   There can be nothing in this point, as the court limited plaintiff's right to recover to the actual cost of sinking the shaft.   (3)   The complaint is also made that the court erred in stating to the jury that the contract had reference to the quantity of the ore.   This instruction was called for from the fact that appellant, through his skilled attorneys, was announcing long and loud to the jury that if afterwards in the distance of seven feet there was any ore in a good quality, no matter whether it would pay to sink a shaft or not, then appellant had complied in good faith with the terms of his guaranty. It is the duty of the court, and not the jury to construe contracts, and the court rightfully told the jury that the contract had had reference to the quantity of the ore. (4)   By the first instruction in behalf of appellant, he asks the court to construe the contract, and the instruction places a construction upon the contract very favorable indeed to the appellant.   (5)   The second and third instructions given in behalf of appellant also construe the contract, and appellant has no right to complain on account thereof.

ELLISON, J.—The present action was instituted on defendant's written agreement to indemnify one E.

J. Winslow for the expense of sinking a mining shaft in a mineral district in Jasper county if the drill hole theretofore put down was not as represented. Winslow assigned the right to sink the shaft and the indemnity to plaintiffs. They sunk the shaft and, contending that the representations were not true, brought the present action and recovered judgment in the circuit court.

It seems that in that mining district prospect holes are drilled into the earth seeking the discovery of lead or zinc, or both, and a record kept of the showing made by the drill. By this means it is ascertained, with more or less probability, the prospect for finding ore in paying quantities by sinking a shaft. The following is the writing referred to above:

"For the sum of one dollar, receipt of which is hereby acknowledged, we hereby agree to indemnify you all expenses of sinking a shaft, if, after you have sunk upon any of these holes or have drifted to them, they are not found to be as good as we represent them.

"We present the following as a faithful and trustworthy log of the holes they respectively represent. . . . . Drill hole No. 3, one to eight feet soil and clay . . . . 110 to 117 feet dark flint with extra good ore. . . . . . . . ''

It is first contended by defendant that the agreement was for the service of Winslow and that it was of such a nature it could not be assigned to plaintiffs. The following authority is cited by defendant to sustain his position. Butts v. McMurry, 74 Mo. App. 526; Lansden v. McCarthy, 45 Mo. 106; Boykin v. Campbell, 9 Mo. App. 495; McQueen v. Choteau, 20 Mo. 222; Arkansas Smelting Co. v. Belden Mining Co., 127 U. S. 379. The last citation is a mining case, and while not like the case before us it contains an instructive statement of the law on the question of assignments.

The plaintiff on the contrary cites us to the following as maintaining the right of assignment: Leahy v. Dugdale, 27 Mo. 437; State ex rel. Sullivan v. Clemens,

42 Mo. 69; Love v. Van Every, 18 Mo. App. 196; Sunday Mirror Co. v. Galvin, 55 Mo. App. 412; Paving Co. v. Prather's Admr., 58 Mo. App. 487; Devlin v. Mayor. 63 N. Y. 8; Munsell v. Lewis, 2 Den. N. Y. 224; Gaston v. Plummer, 14 Conn. 343; Galey v. Mellon, 172 Pa. St. 443; Seers v. Conover, 33 How. Prac. 324; Parsons v. B. & L. Assn., 44 West Va. 335.

We are relieved of the necessity of passing on the question from the fact that in this case it is shown that defendant knew of and assented to the assignment. It therefore became his valid obligation in the hands of the assignees, even though it would not have been without such consent.

It is next objected that the words in the agreement, "extra good ore," only referred to the quality of the ore and had no reference to its quantity. The court rejected that idea and we think properly. It will be noticed that the guaranty was that the first eight feet were soil and clay and that the space between 110 and 117 feet was "dark flint with extra good ore." In that space there was found, on investigation, that the drill had gone through a small "pocket" of ore of no consequence as compared with the full seven feet. From the fact that there was found this small quantity, defendant contends it met the meaning of his contract. We think such not a fair or reasonable interpretation of the words in question. It was not intended that a small particle of extra good ore, in the space named, would discharge the obligation. Manifestly, it was intended to represent that the drill showed extra good ore in quantity. Words of two meanings, or which may be used in more than one sense, become perfectly plain when the connection in which they are used and the situation of the parties, with the object they had in view, are understood. The drill hole had been made with a view of ascertaining, as near as may be, what the prospect was for ore. If it was good, then parties could be found who would go to the large expense of sinking a shaft near

the hole. A good prospect for ore means something more than that some good ore may be found; it must be a prospect in such quantity as will pay to mine. Of what consequence or benefit could it be to the miner if a small particle of extra good ore could be found, if it was not in quantity to justify mining?

When the plaintiffs had put the shaft down to 117 feet, they ran a drift over to the drill hole and thus discovered that it did not fill the obligation which defendant assumed in the contract. The expense of the drift was not included in plaintiffs' claim, as the court's instruction directed the jury, in case the finding was for plaintiffs, to allow for sinking the shaft.

But there is a point made against plaintiffs' instructions which discloses substantial error, especially emphasized in the last one, reading as follows:

"The court instructs the jury that the term 'extra good ore,' as used in the contract sued on, means that for the depth of seven feet and beginning at a point one hundred and ten feet from the surface and continuing to the depth of one hundred and seventeen feet, that a drift driven out to said drill hole would show that the drill for said depth passed through the deposit of extra good ore and that there was seven feet of the same."

Therein the jury is told that the drill must have passed through a seven foot deposit of extra good ore in order to fulfill the contract. Whereas, the contract was that there was seven feet of dark flint *with* extra good ore. It is apparent that the instruction put defendant at great disadvantage and that it left ample room to do him much harm. The instructions for defendant, though they embraced the language used in the contract, did not refer to, nor explain those for plaintiff, and the least that can be said is, that the inevitable tendency was to confuse.

The trial court at the defendant's request very properly directed the jury that the agreement only referred to the drill hole; and that if the drill passed

through extra good ore, beginning at a distance of 110 feet below the surface and continuing to 117 feet below, it fulfilled the contract, notwithstanding such condition did not show or exist in the shaft.

The judgment is reversed and the cause remanded. All concur.