252 S.W.2d 303 (1952)
BOBST
v.
SONS et al.
No. 42947.
Supreme Court of Missouri, Division No. 1.
November 10, 1952.
*304 Barker, Winger, Bagby, Smith & Loftin, Kansas City, for appellant.
Palmer & Davidson, North Kansas City, for respondents.
HYDE, Presiding Judge.
Action for specific performance or in the alternative for damages for breach of contract. The Court found plaintiff's petition without equity and dismissed the action. Plaintiff has appealed.
Plaintiff had a contract with Mr. Sons for the sale to her of land in Clay County upon which he agreed to build a house according to plans and specifications which had been approved by the parties and convey to her completed for $8,000. The title was in defendants by the entirety and Mrs. Sons was not a party to the contract. We think the action was properly dismissed as to Mrs. Sons and specific performance denied. However, plaintiff contends that she was entitled to a judgment for damages against Mr. Sons and we think this contention must be sustained.
Plaintiff argues that Mrs. Sons should be held bound by the contract because she knew about it and assented to it. This contention is based on conversations plaintiff had with Mrs. Sons about the work her husband and son were doing on the house, and about furniture, blinds, decorations and other things plaintiff was considering for it. However, the following appears from plaintiff's own testimony: "Q. Well, I'm asking you, did you discuss this contract with Mrs. Sons? A. No. Q. Did you discuss any of the terms of this deal whatsoever with Mrs. Sons? A. No, I didn't." This, together with Mrs. Sons' testimony that she had no knowledge as to what the contract was between Mr. Sons and plaintiff, was a sufficient basis for the court's dismissal as to her.
The written contract between plaintiff and Mr. Sons was executed March 9, 1950. Plaintiff said Mr. Sons told her "all of the property is clear, all in my name." The house was commenced in April or May. In October, when the house was almost completed, Mr. Sons called plaintiff to come to his attorney's office any she was informed that her contract was "no good." It was suggested that she sign a new contract for $12,000 which Mrs. Sons would sign. She refused to pay more and offered to accept the house as it was. The terms of the written contract were $100 down payment (which Mr. Sons' attorney sent back to her in October but which she refused to accept), $900.00 when the deed was delivered, $5,000 on a first mortgage loan to be obtained from the Sentinel Federal Savings and Loan Association (in whose office the contract was drawn), and a second mortgage of $2,000 to be carried by Mr. Sons. It is conceled that the first mortgage loan "had been all arranged" and that Mr. Sons knew that. It was also shown that real estate prices had advanced during the year due to the Korean War and because a large Ford plant had been located in that part of Clay County.
Mr. Sons was in the appliance and general merchandise business and gave as one reason for his refusal to perform the contract, his claim that he had a verbal contract with plaintiff to buy furniture for the house through him. He said: "Mrs. Bobst had agreed to purchase all of the furniture that went in the house through us, or through our place of business, and after putting in some time and selecting a bunch of the furniture that she was going to use, she called us back in a day or so and canceled the order." He said that occurred in October and it was at that time he discussed the terms of the contract with his wife for the first time and, when she learned of them, she refused to sign the deed. Of course, this later separate oral agreement was no part of the contract for *305 the sale of the real estate and is no ground for dismissal of plaintiff's action against Mr. Sons and it is not so contended. In fact, he admitted he agreed in March to the proposition stated in the written contract but said that it didn't occur to him at the time that his wife would have to sign the deed, although he knew how the title was held.
Plaintiff had evidence that the property was worth at least $11,500 in October 1950 and defendant admitted that he raised the price to $12,000. All the evidence indicates an increase in value after the execution of the contract. Thus plaintiff made a case for damages by showing an intentional breach of the contract by Mr. Sons and a substantial difference between the market value of the property at the time of its repudiation and the contract price. Leath v. Weaver, Mo.App., 202 S.W.2d 125; Hartzcll v. Crumb, 90 Mo. 629, 3 S.W. 59; Kirkpatrick v. Downing, 58 Mo. 32. As we said in a similar situation, in the recent case of Robinson v. Pattee, 359 Mo. 584, 222 S.W.2d 786, 788: "A vendor who alone has contracted to sell land and who is unable to convey a good title because of the refusal of a spouse to join in a conveyance has been held liable in damages for breach of contract. See Way v. Root, 174 Mich. 418, 140 N.W. 577; Key v. Alexander, 91 Fla. 975, 108 So. 883; Greenberg v. Ray, 214 Ala. 481, 108 So. 385; 66 C.J., Vendor and Purchaser, § 1645, pp. 1544-1546; and Wainscott v. Haley, 185 Mo.App. 45, 171 S.W. 983, cited by plaintiff-respondent. It is not unlawful for a person to contract to sell and convey something he does not own but expects to acquire, and, if he unqualifiedly undertakes to do that which later he finds he cannot perform, he should suffer the liability the law imposes upon the contract breaker."
It is conceded in defendant's brief that Mr. Sons "is liable for any damages proved resulting from the breach of the contract which he was later unable to perform because his wife refused to join in the contract or on a deed." However, it is contended that the Court did not find any damages and it is said that plaintiff's witness did not consider the important element that the house would be used by the builder as an exhibition house. Plaintiff did say that in her preliminary talk with defendant's son Jimmy, that he "said he would construct me a house for $8,000 if I would let him use it as an exhibition house and we would have it decorated the way I wanted it, and we would use it as an exhibition house, so he could sell two other houses on two lots they owned." However, there is no such provision in the written contract later executed by plaintiff and Mr. Sons. Defendants also cite 55 Am.Jur. 955, Sec. 562, as follows: "Some courts, however, have taken the position that where a contract fails because the vendor's spouse refused to convey, the vendor is not liable for damages in the amount of the vendee's loss of bargain in the absence of specific evidence of fraud and collusion between the vendor and his spouse." However, this citation shows the weight of authority is the other way and it is not in accord with the law of this state as we have state it in Robinson v. Pattee, supra; see also 66 C.J. 1551, Sec. 1650; Annotations 48 A.L.R. 42 and 68 A.L.R. 147. We hold that plaintiff proved she was entitled to substantial damages.
It should not be necessary to re-try the whole case because the only remaining issue is the amount of damages. Since this is an equity case, this is a matter the Court may determine and, of course, it may hear further evidence on that issue. The rule generally followed in specific performance cases is that if specific performance cannot be ordered because of a disability due to a defect in the vendor's title existing at the time of entering into the contract, or other similar reason, and "the vendee brings his suit in good faith, without a knowledge of the existing disability, supposing, and having reason to suppose, himself entitled to the equitable remedy of a specific performance, and the impossibility is first disclosed by the defendant's answer or in the course of the hearing, then, although the Court cannot grant a specific performance, it will retain the cause, assess the plaintiff's damages, and decree a pecuniary judgment in place of the purely *306 equitable relief originally demanded." 1 Pomeroy's Equity Jurisprudence 443, Sec. 237f; 49 Am.Jur. 195, Sec. 172; 58 C.J. 1253, Sec. 604; McQueen v. Chouteau's Heirs, 20 Mo. 222; Gupton v. Gupton, 47 Mo. 37; Hamilton v. Hamilton, 59 Mo. 232; Ryan v. Dunlap, 111 Mo. 610, 20 S.W. 29; Hagan v. Continental National Bank, 182 Mo. 319, 81 S.W. 171.
The judgment is reversed and the cause remanded with directions to determine plaintiff's damages.
All concur.