(83 Misc. Rep. 417)

### HAGER v. HENNEBERGER et al.

(Supreme Court, Appellate Term, First Department. December 30, 1913.)

1. FRAUDS, STATUTE OF (§ 102*)—SALES—AUTHORITY OF AGENT.

A contract of sale of goods is not invalid under the statute of frauds (Laws 1911, c. 571), providing that a contract of sale of goods of the value of $50 or upwards shall not be enforceable unless some memorandum thereof be signed by the party to be charged or "his agent in that behalf," merely because the buyer's agent signs the memorandum only with his own name; the words quoted not limiting the agent, who can bind the principal to one who, with authority from the principal, signs the principal's name.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 191; Dec. Dig. § 102.*]

2. PRINCIPAL AND AGENT (§ 145*)—AUTHORITY OF AGENT—SALES.

That a buyer's agent signs the memorandum of the contract of sale merely with his own name does not render the contract unenforceable against his principal, where the agent has apparent authority to bind the principal and the principal's relation to the transaction is understood by the seller.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 499, 513-520; Dec. Dig. § 145.*]

3. PRINCIPAL AND AGENT (§ 123*)—AUTHORITY OF AGENT—SUFFICIENCY OF EVIDENCE.

Evidence, in an action for damages for a buyer's breach of a contract made by his agent for the sale of eggs, held to sustain a finding that the contract was made by his agent for his benefit with his apparent authority, though the agent failed to turn over to him the ticket of sale.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 420-429; Dec. Dig. § 123.*]

Lehman, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, First Department.

Action by Clarence H. Hager against William H. Henneberger and another. From a judgment for plaintiff upon a trial without a jury, defendants appeal. Affirmed.

Argued November term, 1913, before LEHMAN, PAGE, and WHITAKER, JJ.

Hieromimus A. Herold, of New York City, for appellants.
Frederick M. Harris, of New York City, for respondent.

PAGE, J. This action was brought to recover damages for the breach of a contract of sale. The facts are: That the plaintiff was the employé of a commission house dealing in eggs, butter, etc. Edgar S. Phelps was an employé of the defendants, likewise commission merchants. Both were members of the Mercantile Exchange. The plaintiff sold to Phelps 100 cases of "fresh gathered first eggs." A memorandum was signed of which the following is a copy:

"February 10, 1913.

"C. H. Hager sells E. B. Phelps one hundred (100) cases of F. G. firsts, delivered within 26 days, at 21 cents per dozen.          [Signed]  C. H. Hager.
                                                                    "E. B. Phelps."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiff and Phelps both testified that this purchase was made on account of the defendant, and testimony was introduced to show that it was the usual custom to make the memorandum in the name of the individual with whom the deal was made, rather than in the name of the firm that he represented. Sufficient evidence was given as to a course of dealing on Phelps' part, both with the plaintiff and others, to establish his authority in this manner to bind the defendants. The defendant maintains that this was a gambling transaction between the two employés, and that had Phelps made a profit they would have never heard of the transaction, but when a loss resulted Phelps sought to saddle them with it.

However plausible this may seem, there is no evidence to sustain such an inference. Phelps testifies: That he had sold 100 cases of eggs to be delivered in 30 days at 22 cents per dozen to one Augenblick, and that he was criticised by defendants, and that he made this transaction to cover that transaction. That subsequently eggs advanced to 24 cents, but later declined, and that one of the defendants stated to Phelps that he should cover the Augenblick sale. That Phelps then informed him that he had already done so and then informed him of the above transaction. That the defendants refused to acknowledge this transaction and purchased the eggs at about 17 cents per dozen and made the delivery to Augenblick. Subsequently, when plaintiff inquired of the defendants whether they were willing to accept the eggs, they stated that they would not under any circumstances accept them. Thereupon they were tendered to Phelps, and, on his refusal, a sale of the eggs was made, and this action brought to recover the difference between the contract price and the sale price.

[1] The appellant contends that this action cannot be maintained because of a change in the statute of frauds as enacted in chapter 571, Laws 1911:

"A contract to sell or a sale of any goods * * * of the value of fifty dollars or upwards shall not be enforceable by action * * * unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

The learned counsel argues that the change from "his lawful agent" in the old law to "his agent in that behalf" has limited the agent who can bind the principal to one who signs the principal's name and is authorized to sign his name.

I think the restriction of authority is to one authorized to act in the transaction and thus approaches more nearly the language of the original statute "their agents thereunto lawfully authorized." Dykers v. Townsend, 24 N. Y. 57, is still good law.

[2] It is undisputed that Phelps made the contract with the plaintiff in his own name for the defendants as disclosed principals and that the plaintiff so understood the transaction. Therefore, whether the custom of the exchange to make contracts in the names of individuals was proven or not, the defendants are liable upon this agreement if Phelps had apparent authority to bind them.

[3] The real question to be determined, therefore, is whether Phelps had been held out by the defendants to have such authority that the

plaintiff was entitled to rely upon his contracts in their behalf. The finding of such authority by the learned trial justice is well supported by evidence of other transactions in which Phelps acted for the defendant and of which plaintiff had notice, and by the admissions of one of the defendants before a committee of the exchange that Phelps sometimes bought and sold for the defendant's firm without specific instructions using his own judgment. The defendant Henneberger also admitted upon the stand that he had censured Phelps for selling eggs to Augenblick at 22 cents, and that later when eggs went down to 17 cents he told Phelps he would cover the sale to Augenblick, and that, when Phelps then informed him that he had already covered it by the purchase from the plaintiff at 21 cents, Henneberger said he would not take the eggs from the plaintiff at 21 cents. In speaking of this transaction before the committee of the exchange, Henneberger also admitted that he would have accepted the transaction of the plaintiff if Phelps had turned in the ticket of sale at the proper time. I think that this evidence shows clearly that the defendant merely repudiated the transaction because of the fall in the market and because he could buy eggs at 17 cents instead of 21 cents. It was clearly made for his benefit and by his agent with apparent, if not actual, authority. The plaintiff was not responsible for Phelps' failure to turn in the ticket. I can see no reason for reversing the conclusion of the trial court.

Judgment should be affirmed, with costs.

WHITAKER, J., concurs.

LEHMAN, J. (dissenting). The plaintiff sues the defendants upon a written contract for the sale and delivery of eggs. The contract reads:

"C. H. Hager sells E. B. Phelps one hundred (100) cases F. G. Firsts, delivered within 26 days, at 21 cents per dozen.            C. H. Hager,
                                                                          "E. B. Phelps."

E. B. Phelps was at the time an employé of the defendants. He testified:

"I was under a contract whereby I participated in the profits and kept a separate ledger of my own transactions."

The plaintiff seeks to hold the defendants as the principals of E. B. Phelps upon this contract.

There is in my opinion sufficient evidence to sustain a finding that Phelps had at least sufficient apparent authority to bind the defendants to a contract for the sale or purchase of eggs, and in my view the real question in this case is whether he was in fact acting for the defendants in making this contract, or whether he was acting for himself, both actually and apparently.

The contract is in form Phelps' individual contract, and if in fact this contract was made by him for his own benefit, and he did not expressly or impliedly represent that he was acting for the defendants, then the plaintiff cannot hold the defendants. It is claimed by Phelps that he entered into this contract for future purchase in order to

provide the eggs for another contract for future sale which he had made, concededly for the defendants' benefit, or in popular phraseology "to cover" the other contract. There is some semblance of probability lent to this story by the fact that the date of delivery of the eggs in the contract upon which the plaintiff is seeking a recovery coincides with the date of delivery to be made on the other contract. On the other hand, it appears that Phelps did not report to the defendants that he had made this contract "to cover" their sale for four days, and in my opinion the whole transaction shows an attempt on Phelps' part to speculate at the risk of his principals, by claiming this contract as his individual contract if the market went in his favor, with the intention of turning the contract over to the defendants if the market went against him.

Upon this issue we have several very significant pieces of evidence. Of course, the most significant fact is the contract itself made in his individual name, and to overcome this fact the plaintiff is bound to show some satisfactory reason why the contract was made in this form. Phelps and the plaintiff explain that the reason why the contract was made in this form is "because all business in the ring between members of the exchange has to be done as individuals, they do not recognize firms."

It appears that this contract was not made "in the ring" at the exchange, but was an unusual transaction made at a restaurant, and therefore not subject to the rules of the exchange; yet, while the rules of the exchange are not applicable to this transaction made off the exchange, still the custom of the dealings made under the rules of the exchange might well be considered material upon the intent of the parties in transactions made off the exchange. However, a careful reading of the testimony will demonstrate that neither the rule nor custom of the exchange can help the plaintiff to establish his cause of action.

The plaintiff was asked on cross-examination, "Why didn't you write in the name of Henneberger & Herold," and he answered: "It is customary when sales are made on the exchange; in the street they are made out in that firm." And Phelps was asked similar questions. While his answers are self-contradictory and evasive, it appears that he was asked in regard to his transactions on the exchange the following question, and gave the following answer:

"The name of Henneberger & Herold do not appear. A. In case of future sales they were signed in pen and ink in that name."

In other words, as I read the testimony, it would appear that the exchange recognizes only its individual members, and requires contracts made under its rules to be signed by them; but the custom is that "future" contracts should also contain the name of the firm represented by the individual member.

Even if, however, I have misinterpreted this testimony, and it is only fair to say that there are so many contradictory statements on this point that it seems to me quite impossible to determine definitely on this record what the rules or customs of the exchange require in regard to future sales, yet I still would hold that no custom of the exchange in regard to future sales would affect this transaction.

It is practically undisputed that in sales made off the exchange it is the custom to make the contract in the principal's name. It would also appear that future sales made under call on the exchange require the deposit of an original margin to protect the parties, and that the question of personal liability is of minor importance. It would seem therefore that a custom, if it exists, of not disclosing the principal upon such contracts, could have little materiality in enabling us to determine the intent of parties making a contract for future sale, without deposit of margin and not on the floor of the exchange.

I am therefore constrained to hold that the plaintiff's testimony that this contract was in fact made for the defendants is so contradicted by its form and the circumstances under which it was made that his testimony should not be given any weight. In this connection it is to be noted, also, that the plaintiff is also an employé of another firm, and that he is claiming the benefit of this contract individually and not for the firm. The entire transaction is quite consistent with the view that these two employés of firms which they represented on the exchange have entered into a gambling contract together, intending that the winner should claim the profits individually, and foist the loss on the firm represented by the loser. The plaintiff claims that the transaction was made in the presence of witnesses, and I think that, before he can recover on a transaction bearing such earmarks of fraud, he should be required to produce these witnesses to substantiate his story.

The judgment should be reversed, and a new trial ordered, with costs to appellants to abide the event.