KNICKERBOCKER PORTLAND CEMENT COMPANY, INC., Appellant, *v.* THE STATE OF NEW YORK and Others, Defendants, Impleaded with BLACK RIVER NATIONAL BANK, Respondent, and HAROLD W. CONDE, Appellant.

Third Department, September 8, 1926.

Liens — materialmen's lien under Lien Law, § 5, for cement furnished subcontractors on State highway — brother of subcontractors signed contract for purchase — cement was invoiced to purchaser but consigned to subcontractors who paid invoices and freight — invoices were assigned to defendant bank which loaned money to subcontractors — said assignment was not sale and, therefore, bank never had title and cannot claim sale of cement to subcontractors — said assignment, if chattel mortgage, is void under Lien Law, § 230, as to plaintiff, for failure to file — evidence — testimony should have been admitted that purchaser was acting as agent of subcontractors.

The plaintiff claims a lien under section 5 of the Lien Law for the value of certain cement furnished by it to subcontractors engaged in the construction of a State highway. A brother of the subcontractors signed the contract for the purchase of the cement which was negotiated by the subcontractors and the cement was invoiced to the purchaser, but was consigned to the subcontractors who paid the invoices and the freight, and the purchaser never had possession of the cement at any time. The purchaser and one of the subcontractors took certain invoices for cement involved in this action to the defendant bank which

loaned money to the subcontractors and which received an assignment of the invoices from the purchaser. The contention by the defendant bank that the assignment of the invoices to it by the purchaser constituted a sale of the cement to it and that it thereafter sold the same cement to the subcontractors and is entitled to a lien cannot be sustained for the assignment did not constitute a sale of the cement to the bank.

If it can be held that the assignment by the purchaser of the invoices constituted a chattel mortgage, the chattel mortgage is void as to the plaintiff for failure to file as required by section 230 of the Lien Law.

It was error for the referee to exclude testimony tending to show that the purchaser when he signed the contract of purchase did so as the agent for the subcontractors, and inasmuch as the evidence admitted is not sufficient to show the existence of agency, a new trial is granted to enable the plaintiff to establish that fact, if possible.

APPEAL by the plaintiff, Knickerbocker Portland Cement Company, Inc., from a judgment of the Supreme Court in favor of the defendants Black River National Bank and Harold W. Conde, entered in the office of the clerk of the county of Albany on the 6th day of June, 1925, upon the report of a referee appointed to hear and determine the whole issues.

Appeal by the defendant, Harold W. Conde, from so much of said judgment as awards costs to the defendant Black River National Bank, as taxed at $995.23, payable out of the fund of $13,000, in the hands of the Watertown National Bank as trustee.

The action was brought to foreclose a lien for materials alleged to have been furnished by the plaintiff to the defendants Sherman D. Smith and I. Ives Smith, doing business under the name of Smith Bros. Construction Co. The respondent Black River National Bank answered denying that plaintiff has a valid lien and setting forth as a counterclaim a cause of action to foreclose its own lien for furnishing the same materials to Smith Bros. Construction Co., admittedly a subcontractor on a State highway contract. Prior to the commencement of the action the parties, including a creditor's committee of Smith Bros. Construction Co., had entered into a stipulation setting aside the sum of $13,000 out of the fund due from the State of New York on the highway contract, which fund was deposited in trust under an order of the Supreme Court based upon said stipulation. It was stipulated that if the alleged liens of the plaintiff and the defendant bank, either or both of them, should be established, such liens would attach to said fund and be paid therefrom and that in the absence of the establishment of any liens thereon the fund or any balance over should be paid to the creditor's committee. The judgment appealed from adjudged that the said bank has a valid lien payable out of said fund. It was further adjudged that the balance be paid to the creditor's committee; that the plaintiff has no valid

**24** Knickerbocker P. C. Co., Inc., *v.* State of New York.

Third Department, September, 1926.     [Vol. 218

lien but is entitled to recover the amount due to it from the defendant Earle S. Smith as the purchaser from the plaintiff of the materials set forth in the plaintiff's notice of lien.

The plaintiff appeals from the judgment as a whole, and the creditor's committee appeals only from that part of the judgment which directed the payment to the said bank of costs and extra allowance out of the fund. Briefs were filed in this court only on behalf of the plaintiff, appellant, and the respondent Black River National Bank.

*Chadbourne, Stanchfield & Levy* [*Roger B. Hull* of counsel], for the plaintiff, appellant.

*George Stephens Reed,* for the respondent.

Hinman, J.  G. Aubrey Smith, who held a contract with the State of New York for the construction of a road in Lewis county, N. Y., turned the said contract over to his brothers Sherman D. Smith and I. Ives Smith, doing business under the firm name of Smith Bros. Construction Co., who took over the entire operation. Concededly Smith Bros. Construction Co. were subcontractors within the meaning of section 5 of the Lien Law,* which provides that a person furnishing materials to a contractor or his subcontractor for the construction of a public improvement pursuant to a contract with the State shall have a lien for the agreed price of such materials upon filing a notice of lien as prescribed by law. Smith Bros. Construction Co. met all the payrolls and paid for all materials which were paid for. Under the agreement of the company with G. Aubrey Smith the former was to pay the expenses and receive the benefits of the contract. Earle S. Smith was another brother who had formerly been a general dealer in cement and other articles, but during the execution of this road contract was a foreman on the job in the employ of Smith Bros. Construction Co. During that time he did not do any business as a general dealer in cement but he purchased from the plaintiff, as shown by the plaintiff's books and the testimony, various quantities of cement in connection with several highway contracts, which were being carried out by the Smith Bros. Construction Co. about this time. After the Smith Bros. Construction Co. had entered upon the performance of this highway contract, it became necessary to purchase a large supply of cement. After some kind of negotiations between a representative of the plaintiff and Sherman D. Smith, who had general charge of all the work done on this highway, the plaintiff entered into a written contract with Earle S. Smith

---

* Added by Laws of 1911, chap. 873, as amd. by Laws of 1916, chap. 507.— [Rep.

purporting to sell the requisite quantity of cement for this highway contract to Earle S. Smith who was to pay for the same at a price specified in the contract. The cement was to be delivered F. O. B. cars Lowville, N. Y. Nothing was said in the contract with reference to Smith Bros. Construction Co. Their name was not mentioned. When the contract with Earle S. Smith was executed it was sent by mail by the plaintiff to the office of Smith Bros. Construction Co., and Earle S. Smith, having had no negotiations at all with the plaintiff with reference to the contract, upon being informed by his brother Sherman that the contract had arrived, signed it, although he had never seen it before. Thereafter all of the cement shipped by the plaintiff was invoiced as sold to Earle S. Smith and consigned to Smith Bros. Construction Co., Lowville, N. Y. None of said cement was consigned to Earle S. Smith. Directions were given to the plaintiff by Sherman D. Smith to consign the cement to Smith Bros. Construction Co. All of the invoices covering such shipments which were paid at all were paid by check of Smith Bros. Construction Co. None of them were paid by Earle S. Smith. In response to a communication from the plaintiff to Earle S. Smith for a verification of the account as to the amount of cement delivered, the plaintiff received a response from Smith Bros. Construction Co. verifying the balance due on the account. No response was received from Earle S. Smith. The freight was paid by Smith Bros. Construction Co., which company receipted for the same to the railroad. Earle S. Smith never took into his possession by truck, warehouse or otherwise any of the cement covered by the invoices in question. All of the shipments of this cement covered by the plaintiff's notice of lien were used in the construction of this highway by Smith Bros. Construction Co.

After a number of carloads of cement had been invoiced to Earle S. Smith and consigned to Smith Bros. Construction Co. by the plaintiff, those invoices were taken by Sherman Smith and Earle Smith to the Black River National Bank, where the Smith Bros. Construction Co. negotiated a loan of $10,000, which sum was placed to the credit of said company and Sherman Smith on behalf of said company executed two demand notes of $5,000 each which he gave to said bank. At the same time Earle Smith executed an assignment which was typewritten upon the back of each of the said invoices in the following language:

" For value received, I hereby sell, assign, transfer and set over unto the Black River National Bank of Lowville, the merchandise mentioned and described on the reverse side of this sheet, it being 231 bbls. of Knickerbocker Portland cement, hereby ratifying and

**26** Knickerbocker P. C. Co., Inc., *v.* State of New York.

Third Department, September, 1926. [Vol. 218

confirming the ownership of the said property in and to the said bank for their own use and benefit, and with full power and authority to sell and convert the same, as to it may appear to be proper."

These invoices were then left with the bank. The value of the carloads of cement represented by said invoices was $9,447.04. The referee has found that there was a sale of this cement to the bank followed by a sale of the same by the bank to Smith Bros. Construction Co. and that the bank furnished the materials to the subcontractor and was entitled to a lien therefor. We think there was no sale of this cement by Earle Smith to the bank, and, therefore, no transfer of title to Smith Bros. Construction Co. from the bank. In no event could the effect of the paper in the form of an assignment executed by Earle Smith to the bank be more than to create a mere chattel mortgage lien as collateral security for the two $5,000 notes, which in turn would be merely evidence of the $10,000 loan which the bank made to Smith Bros. Construction Co. If the assignment of the cement by Earle Smith to the bank was in effect a chattel mortgage it was void as against the plaintiff for lack of proper filing. (Lien Law, § 230.)* There was, therefore, no sale or furnishing of materials by the bank to Smith Bros. Construction Co. notwithstanding the naked conclusion to that effect in the testimony of the president of the bank. Neither was there a sale from Earle Smith to the bank. At most a lien was created and that lien was void as to the plaintiff.

It remains to determine whether the plaintiff has shown facts sufficient to establish its own lien. On the face of the contract between the plaintiff and Earle S. Smith there was nothing to indicate anything other than a sale to Earle S. Smith. It is the contention of the plaintiff, however, that Earle Smith acted as the agent of Smith Bros. Construction Co. in the purchase of this cement. When the plaintiff attempted to show this agency the referee excluded much of the testimony which would have revealed that fact if true. The referee's ruling was that the testimony offered tended to modify the written instrument or that the negotiations prior to the execution of the contract were merged in the written instrument. The rule is that parol evidence may be offered to show that a party to a written contract not under seal, and other than a negotiable instrument, who signed it individually, really made it in behalf of another for whom he was duly acting as agent at the time, but not to show that the party so signing was not himself personally bound. (*Brady* v. *Nally,* 151 N. Y. 258; *Woodhouse* v. *Duncan,* 106 id. 527; *Meyer* v. *Redmond,*

* As amd. by Laws of 1916, chap. 348.— [Rep.

205 id. 478, 482; *Crowley* v. *Lewis*, 239 id. 264; *Gordon Malting Co.* v. *Bartels Brewing Co.*, 206 id. 528; *Hager* v. *Henneberger*, 83 Misc. 417.)   The contract with Earle S. Smith was not under seal.

If the contention of the plaintiff is borne out by the facts there was a sale and delivery of the cement by the plaintiff to Earle Smith as agent for Smith Bros. Construction Co.   It was, therefore, a sale and delivery to the latter as principal and the plaintiff was entitled to a lien for materials furnished to said subcontractor and the plaintiff is entitled to judgment.   While there are some facts shown in the record which may tend to prove such an agency, the record is not as satisfactory as it should be and we think there should be a new trial at which full opportunity will be afforded to receive the testimony which was excluded by the referee and any other testimony that may be offered.

The judgment should be reversed upon the law and facts and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment reversed on the law and facts, and new trial granted, with costs to the appellant to abide the event.

The court disapproves findings of fact numbered 22, 25, 26, 27, 29, 30, 31, 32, 33, 34, 35, 36, 39, 40, 41, 49, 51, 57, 76, 89, 90, 91, 92 and 93.